## FULLER v. DOWNING.

(Supreme Court, Appellate Division, First Department. June 7, 1907.)

**1. MASTER AND SERVANT—CONTRACT OF EMPLOYMENT—TERMINATION.**

A condition in a contract employing a sales agent, authorizing the employer to terminate the contract on four months' notice, in case he wished to form a combination with other manufacturers in the same line of business, was valid and sustainable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 20.]

**2. SAME—GOOD FAITH.**

Where a contract employing plaintiff as defendant's sales agent authorized defendant to terminate the same on four months' notice, in case he desired to form a combination with other manufacturers of machinery similar to that defendant manufactured, defendant was bound to exercise good faith in terminating the contract under such provision.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 20.]

**3. SAME—NOTICE.**

Defendant employed plaintiff as his exclusive sales agent for five years, the contract providing that if defendant disposed of his business, or wished to combine with other manufacturers, he might terminate the contract by four months' written notice. During the contract term, defendant wrote plaintiff a letter complaining of the lack of orders, owing to competition, and that defendant was obliged to take advantage of the provisions of the contract authorizing termination of the agreement, which they would consider at an end after four months. *Held*, that the letter constituted a sufficient notice to terminate the contract according to its terms.

**4. SAME—EVIDENCE.**

Where a contract employing plaintiff as defendant's sales agent authorized defendant to terminate it on four months' notice, in case defendant desired to enter into a combination with other manufacturers, and defendant sought to exercise such condition, evidence concerning defendant's connection with an effort to consolidate his own factory with that of two others manufacturing similar machinery was admissible as bearing on the question of defendant's good faith in the premises.

Appeal from Trial Term, New York County.

Action by Egbert C. Fuller against Wellington Downing. From a judgment in favor of plaintiff, entered on report of a referee on an accounting in an action to recover damages for breach of contract of employment, defendant appeals. Reversed. New trial granted.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, CLARKE and LAMBERT, JJ.

Kellogg & Rose (Abram J. Rose, of counsel, Robert Lawrence, on the brief), for appellant.

J. Campbell Thompson (Charles De Hart Brower, of counsel), for respondent.

CLARKE, J. On the 11th day of April, 1900, the defendant, a manufacturer of folding machines under the name of Brown Folding Machine Company, at Erie, Pa., by a written contract, appointed the plaintiff his sole agent for the sale of folding machines for the period of five years, beginning January 1, 1901. The plaintiff was at that time engaged in the business of selling machinery in the city of New

York under the name and style of E. C. Fuller & Co. By the 11th
paragraph of the contract it was provided as follows:

"It is hereby further agreed that should the party of the first part dispose
of his business of manufacturing folding machines at any time during the life
of this agreement, or wish to form a combination with other manufacturers
of folding machinery, he shall have the right to terminate this agreement by
giving four months' notice in writing to the party of the second part."

On the 9th day of April, 1901, the defendant wrote to the plaintiff
the following letter:

"We seem to be losing a large majority of orders, owing to the fact that
our prices are beyond those of Dexter's and their combining folder and feeder
in one at about the same price we would ask for our double 16. This natu-
rally places us in a position wherein we cannot derive any benefit from the
agency we established with you on the 1st of January, and in accordance with
the eleventh paragraph thereof we are obliged, for self-protection, to take
advantage of its conditions. We were in hopes that the results would have
been vastly different from what they are, but our anticipations have been
disappointing. We cannot afford to continue to lose business and have the
volume thereof fall short every month over that of last year when we were
operating on an entirely different plan. Of course, until the expiration of the
four months, we will adhere to the contract, but at the end of that time we
expect to be in a position to give Mr. Dexter and all comers a shake up in the
prices. In other words, we propose to cut prices, even though we must do so
to an extent that will permit of our barely existing. We have arrived at this
conclusion after carefully considering the matter, and believe it to be the only
plan in which we can crush Dexter. We presume you will readily see the
position we are in when you figure up the number of orders we have received
since our contract with you and how far it would go toward meeting the vol-
ume of business transacted by us last year."

To this letter the defendant replied on the 11th day of April, 1901,
as follows:

"We have your valued favors of the 9th inst., and would have replied yester-
day but the writer was in Philadelphia. * * * As the agreement made be-
tween you and E. C. Fuller & Co., regarding the sale of your machinery, is
not where the writer can get at it, we do not know what the eleventh para-
graph provides for, but take it that you mean to sever the connection."

This letter was dictated by Mr. E. E. Bush, who was in the employ
of the defendant, and was in charge of his business, received his let-
ters, and answered them when Mr. Fuller was away, and wrote to
him about every day.

On April 11th Mr. Bush wrote to Mr. Fuller, the plaintiff, inclos-
ing a copy of the letter of April 9th, stating:

"I have replied that while the contract is not where I can see it, that I
presume the eleventh paragraph he refers to provides for the termination of
the contract; that we realized up to the present we had not sent them many
orders, but that we had put in a great deal of hard work which was bound to
bring in big business. I told him the matter would be brought to your atten-
tion upon your return from the West."

It is conceded that under the eleventh clause of the contract the de-
fendant-appellant had the right to terminate the agreement by giving
four months' notice in writing upon either one of two contingencies:
First, should the defendant dispose of his business at any time during
the life of the agreement. That contingency was based upon the
existence of an actual fact, and it is conceded that that fact never ex-

isted. Second, wish to form a combination with other manufacturers of folding machines. That condition depended upon the existence of a state of mind. The validity and effectiveness of such a condition in a contract has been sustained by the courts.

In Wooster v. Sage, 67 N. Y. 67, the action was brought to recover back the purchase price of two railroad bonds purchased with the option to return if the purchaser became sick of them, in which case defendant was to repay the purchase money. In upholding the right to recover, the court said:

"It was not made material how or for what reason the plaintiff became dissatisfied, or by what influence. He may have acted upon the advice of a friend or submitted to the opinion of a third person. His dissatisfaction, however produced, gave him the unqualified right to return"—cited and followed in Fitzpatrick v. Woodruff, 96 N. Y. 561; Johnson v. Trask, 116 N. Y. 136, 22 N. E. 377, 5 L. R. A. 630, 15 Am. St. Rep. 394.

The appellant admits that this contract of employment was not of the class involving taste, fancy, interest, personal satisfaction, or judgment, where the question of whether or not the services of the employé were satisfactory was to be determined by the employer, and not by the court or jury, as in Crawford v. Mail & Express Pub. Co., 163 N. Y. 404, 57 N. E. 616, but rather of the class illustrated in Smith v. Robson, 148 N. Y. 252, 42 N. E. 677, where, although the master had the power to discharge the employé if satisfied in good faith that he was incompetent, the court held that the question of good faith was one of fact, thus distinguishing it from the cases in which contracts were made to gratify taste, to serve personal convenience, or individual preferences. The appellant agrees that the law reads into this contract the words "in good faith," so that the legal effect of the second option would be to cause the phrase to read "or in good faith wish to form a combination with other manufacturers of folding machinery." With this interpretation we agree. Under it there was a question of fact for the court to determine, upon competent evidence, whether at the time the written notice was given the defendant did in good faith wish to enter into the specified combination.

The respondent claims that the letter of April 9th was entirely insufficient, as the notice provided for in paragraph 11 of the contract. With this contention we do not agree. The letter was specific in its reference to the eleventh paragraph, and, as the plaintiff had a copy of the contract, must be interpreted as if the provisions of said clause had been repeated in the letter. That there is no doubt about this is shown by the answer of April 11th, "We take it that you mean to sever the connection"; and by the letter of Bush to the plaintiff, inclosing a copy of the April 9th letter, "I presume the eleventh paragraph he refers to provides for the termination of the contract."

On May 13th, the defendant wrote:

"And at the end of our notice given you some weeks ago, we propose to dissolve all business relations. * * * In conclusion, we will adhere strictly to our contract until the expiration of our notice, but thereafter you may consider all business relations between us will cease."

104 N.Y.S.—63

On August 13th, the defendant wrote:

"In accordance with our letter of April 9th, we presume that your understanding is the same as ours, regarding the canceling of our contract for the sole agency of our product in this country."

To this the plaintiff answered, on August 15th:

"In regard to your letter of April 13th, referring to your letter of April 9th, your understanding of the contract between us and our understanding of it appears to be at variance. We do not understand that you have any right to cancel the contract without our consent and must therefore refuse to accept your proposal to cancel it."

To that the defendant answered, on August 19th:

"How can you misinterpret the contract between us? We fail to understand. The contract calls for four months' notice, which we gave, and under the circumstances we can hardly consider ourselves as bounden for any further period of time thereunder."

It is evident from this correspondence that the plaintiff understood that by the letter of April 9th the defendant intended to give the notice canceling the contract, under the provisions of paragraph 11. The point taken by the plaintiff was, not that he did not understand this intention upon the defendant's part, but that the defendant had no right to cancel his contract without the plaintiff's consent, and therefore he refused to accept the defendant's proposal to cancel it. In this he was mistaken. The cancellation was not contingent upon mutual consent, but upon the exercise by the defendant, in good faith, of the option reserved to him.

I am of the opinion, therefore, that the notice, considered as a notice, was sufficient, and the determination of the case therefore depends upon the question whether it was given in good faith, in the exercise of the option reserved. This, as hereinbefore pointed out, was an issue of fact which the defendant was entitled to support by all competent evidence.

On the 15th of April, the defendant wrote to Mr. Bush, in general charge of the plaintiff's business, a letter, which the plaintiff saw:

"I will now write you regarding my recent action so far as giving Mr. Fuller notice in accordance with the eleventh paragraph of our agreement. In the first place, the paragraph reads as follows [quoting it]: Some two or three weeks ago I was requested to give my option to a party who is now endeavoring to bring about a consolidation of the three concerns, that is Dexter, Chambers, as well as myself. Both of the others have given their options, and it was at my instigation that the same party, Mr. Stirling L. Bailey, wrote you requesting Mr. Fuller to enter the compact with the Economic Feeder."

This letter was offered and excluded upon objection of the plaintiff. The defendant was asked:

"I think you have already testified, Mr. Downing, that prior to this notice of April 9th there was under way and in process of formation a combination of manufacturers of folding machines? A. There was. Q. Did you have any dealings or any correspondence with anybody, and, if so, whom, in regard to that combination?"

This question was excluded, upon objection of the plaintiff.

Again, defendant was asked:

"Mr. Downing, I think you testified yesterday that you knew Mr. Stirling L. Bailey who was mentioned in certain letters offered for identification? A.

I did.  Q. Did you, prior to April, 1901, have any conversations with him, one or more, with reference to entering into a combination of folding machines?  (Objected to.  Sustained.)  Will you state such conversations?  (Objected to.  Sustained.)"

The defendant offered in evidence a series of letters extending over a period from January 28, 1901, to May 13, 1902.  This correspondence tends to establish that Mr. Bailey had an option for 90 days on the business of each of the two competitors of the defendant; that he was endeavoring to make a combination; that he asked of the defendant an option and his terms; that the defendant gave him terms; that if the terms had been accepted the combination would have been made; that the plaintiff was aware of the attempt to form this combination; and that, upon the suggestion of the defendant, the plaintiff had been approached and requested to join therein.  All of these letters were excluded; the result being that a question of fact being presented as to whether or not at the time of the giving of the notice the defendant did, in good faith, wish to enter into a combination, all evidence tending to establish that good faith was excluded by the learned referee.

Having excluded this evidence, the learned referee, in his opinion, alluding to the letter of April 9th, stated:

"This letter  *  *  *  fairly negatived the idea of a combination, justified the plaintiff in believing that neither of the contingencies entitling the defendant to terminate the contract had arisen; that he therefore had no right to terminate the contract; that the noice was therefore ineffectual and the contract was still in existence."

What inferences should have been drawn from the evidence, if admitted, was for the court engaged in trying the facts.  To exclude the evidence, and yet to draw the conclusion that neither of the contingencies entitling the defendant to terminate the contract had arisen, cannot be sustained.  Said Judge Vann, in his dissenting opinion in Crawford v. Mail & Express Company, supra, laying down the rule which I understand is not disputed where the employment is such that the good faith of the party exercising the right to discharge can be inquired into by the court, in other words, cases not involving taste, fancy, interest, personal satisfaction, and judgment, as is the case at bar:

"Their letter of dismissal under the circumstances permitted the inference that they discharged the plaintiff for a reason, not named in the contract, nor permitted by law.  Even if the evidence to rebut this inference was very strong, a question of fact arose for the jury to decide."

The error in this record is that competent evidence of a justification for the discharge was not admitted.  The learned referee did not permit the question of good faith to be properly submitted.

The judgment therefore should be reversed, and a new trial ordered, with costs to the appellant to abide the event.  All concur.