(156 App. Div. 636.)

### DIAMOND v. MENDELSOHN et al.

(Supreme Court, Appellate Division, First Department. May 16, 1913.)

1. MASTER AND SERVANT (§ 80*)—ACTION FOR WAGES—QUESTION FOR JURY—REASON FOR DISCHARGE.

On evidence in an action for wages under a written contract, *held*, that the question whether plaintiff had been discharged, because not satisfactory to the defendants, was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 107–127; Dec. Dig. § 80.*]

2. MASTER AND SERVANT (§ 30*)—CONTRACT OF EMPLOYMENT—DISCHARGE.

A contract of employment, by which plaintiff was to perform the duties of foreman competently and to the complete satisfaction of his employer, entitled the employer to discharge him because he did not perform his duties to his complete satisfaction, without inquiry as to whether he should have been satisfied.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 30–36; Dec. Dig. § 30.*]

Appeal from Appellate Term, First Department.

Action by Jacob Diamond against Herman T. Mendelsohn and another. From a determination of the Appellate Term (132 N. Y. Supp. 770), reversing a judgment of the City Court entered upon a verdict and dismissing the complaint, plaintiff appeals. Reversed, and judgment of the City Court reinstated.

See, also, 149 App. Div. 943, 134 N. Y. Supp. 1130.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Henry Kuntz, of New York City (M. Spencer Bevins, of New York City, of counsel, and Abraham F. Wilkes, of New York City, on the brief), for appellant.

Phillips & Phillips, of New York City (Harold M. Phillips, of New York City, of counsel), for respondents.

CLARKE, J. The complaint alleges that on or about the 6th of February, 1906, plaintiff and defendants entered into an agreement whereby and by the terms of which the defendants hired and employed the plaintiff as foreman for the term of one year, commencing on about that day, and agreed to pay the plaintiff for his services the sum of $24 per week, of which salary $2 each week were deducted and held by the defendants as security for the faithful·performance by the plaintiff of the said agreement; that the plaintiff entered upon said employment, and so remained up to the 21st of June, 1906, when he was discharged without cause, and demands judgment for $830.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The answer first denies each and every allegation of the complaint. As a second separate and distinct defense, defendants allege that on or about the 21st of June, 1906, the plaintiff left the employ of defendants of his own volition, and thereby failed to live up to the terms and conditions contained in the agreement set forth in the plaintiff's complaint, if such an agreement existed; second, that the plaintiff, while in the employ of defendants, neglected to attend to his duties, and did not perform his labors in a good and workmanlike manner, and in various ways worked damage and injury to the defendants' interests, instead of being of service to them. It will be noted defendants refrain from admitting a discharge by them for *any* cause.

Upon the trial plaintiff called for his first witness defendant Mendelsohn, who swore that:

"A few months before 1906 Diamond was employed by us. * * * There was no contract in writing between myself and Mr. Diamond. I do not know of any contract in writing between the firm of Mendelsohn & Schlang and Diamond. * * * For the season, that is the way we employed him; * * * for the season, it all depends on how long it lasts. * * * February 6th we never made a contract; we never make contracts. Q. And never made a contract with Diamond for a year, or any other time, is that right? A. Yes, sir."

Plaintiff testified that he was a foreman, and worked for Mendelsohn & Schlang for about a year before February 1906.

"On February 6th I and Mendelsohn & Schlang had a talk together. After this talk I got this writing. Mr. Mendelsohn gave it to me [this exhibit is dated February 6th, 1906, upon the defendants' letter paper]:

" 'It is hereby agreed and understood that Mendelsohn & Schlang shall employ Mr. Jacob Diamond as foreman in their factory at their present address for the term of one year from the above date. It is also agreed and understood that said Jacob Diamond shall perform the duties of foreman competently and energetically to the best of his abilities and complete satisfaction of his employers, said Messrs. Mendelsohn & Schlang. It is also agreed and understood that Mr. Jacob Diamond shall in return for his services receive a salary of $24 (twenty-four dollars) per week during his employment and that $2 (two dollars) per week shall be deducted as a guaranty of good faith. This amount thus deducted shall be collectible at the expiration of this agreement only.          [Signed]     Jacob Diamond,
                                                  " 'Mendelsohn & Schlang.' "

Plaintiff testified that he remained until the 21st of June, and during that time received $22 a week; that is, $24 less the $2 deducted.

"The last day I worked there Mr. Mendelsohn comes to me and says, ' * * * Mr. Diamond, stop the work,' and I said, 'Why?' and he said, 'You could not work for me any more.' I asked him what was the trouble, and he said, 'Don't ask me for any trouble; you cannot work here because I have got a man, and he can attend to your work, and I cannot keep you, too; it is slack.' It was over the season. He said that the man is a designer, Mr. Lavine. * * * When he told me that Lavine, the designer, can attend to his work and my work, I told him I have a contract, and would not leave, and he said, 'You can do as you please.' "

Under cross-examination:

"Mendelsohn told me he don't want to have me more to have to work for him, because he was not entitled to keep me in the slack time; he has a man, and he is going to take care of my work; that was the designer; that

is what he told me. Then, when I said to him, 'I have a written agreement in which it says you must keep me for a year,' he excused himself then. * * * One time I told him I would not leave this go; 'I will see you in the court;' and one time he told me, 'I had more trials in my life than you have money in your pocket, and I never lose.' * * * One time I told him again, 'Mr. Mendelsohn, you will feel sorry,' and he said, 'Don't tell me; do what you want, and that is all.' And that is the only explanation he gave; he did not even try to excuse himself. He gave me no excuse at all. He did not tell me about the work or anything."

## Plaintiff's daughter, Esther, testified:

"In the interview between my father and Mr. Mendelsohn, Mr. Mendelsohn did not try to give some excuse for discharging my father; simply he did not want him any more. He did not say, 'I am not satisfied with you.' He said he didn't want his services any longer."

At the close of the plaintiff's case the defendants moved to dismiss the complaint, upon the ground solely that the plaintiff had not shown he had made any diligent effort to obtain employment after his discharge, which was denied.

Mendelsohn testified that when he was on the stand before he was not aware of the existence of that paper.

"Schlang never told me he gave a contract to Diamond. Diamond never had a contract before that day, a written contract."

Subsequently Exhibit D was put in evidence, dated February 6, 1905, which was a yearly contract for the year before, in writing, for $20 per week and $2 deducted as a guaranty of good faith.

"I told Diamond that I found that he had been making very big fights with the designer and laborers, and that he took money from laborers, and that he made fights with the men, and they got up, and in fact at one time they got up and struck, and he made the remark that if the designer does not go down he will go down. By that I mean, that is, if the designer does not leave he would leave, and the designer had a written contract. * * * He remarked that, if Lavine don't go down, the designer, he was going to leave, and I said, 'If you want to leave, you can go ahead and leave.' I told him what grievances I had against him. I told him he made a lot of disturbance there, and cursed, and told me that I was not the boss there; that he was. At that time he had a very big fight with the designer the day he went down, and that same day I found out that the operators were giving him money, and I told him that he was taking money from the laborers. I told him his services were not satisfactory. * * * I heard Diamond testify I gave him no reason or explanation for discharging him. It is not true, as he said, that no conversation took place between us at all. I gave him a reason for discharging him."

## Under cross-examination he testified:

"To-day is the first time I heard the plaintiff, Diamond, claim he had an agreement with us for a year. * * * Before this contract of February, 1906, he was there about six months. I am sure about that, because I know when he came. He came in the fall season, and that would be about July, and whatever time he spent with us between July and February I watched him and his work, and saw what he was doing, and from what I understand now, or the information I got, his work was not satisfactory. The work I saw this plaintiff doing up to February 6, 1906, was satisfactory, because he had no contract. It was satisfactory, because he was working without a

contract; but as soon as he got a contract he thought he owned the place. Evidently, when we found his work to be satisfactory in February, then we gave him a contract. As far as my knowledge now, it was for the season; but I saw Schlang sign a contract. I don't remember talking to Diamond about working for us for the season. Mr. Schlang made the arrangement; I don't know. That was the agreement that we pay him $24 a week. It is for the season or year; anyway I spoke to him. I did not speak about any years at all. I might have spoken about the season, and I might not."

After the Exhibit D, the contract for the previous year was put in:

"This refreshes my recollection that Diamond did work for a year. I can't recollect whether the first year he was pretty good as a foreman; I suppose he was."

There was some evidence given by workingmen regarding fighting with them, and the claim by one of them that he had paid $5 to the foreman for work; but the man who testified to that swore that he never told the defendants of that fact. Mendelsohn, recalled, testified as follows:

"I knew that the workmen were complaining about Diamond, and I stated that to Diamond while he was working for me. I did not discharge Diamond when I heard the complaints, because I never felt like discharging any man any time on account of trouble, especially if he had a contract with me, especially as there might have been. I know at that time there was a contract; I could not recollect all the time."

At the close of the whole case the defendant moved to dismiss on the "full satisfaction" clause of the written contract, which having been denied, he excepted. The learned court in the charge made this allusion to the contract:

"The plaintiff has introduced in evidence a paper, which has been frankly conceded to be a contract, wherein and whereby he was employed by these defendants from the 6th day of February, 1906, for one year, at a weekly salary or stipend of $24, to act as their foreman, to render services in that capacity to their satisfaction, and to deposit and leave with them, as security that he would maintain such relationship in all its integrity as promised, and work for one year, the sum of $2 weekly. The defendants concede, if not in their answer, upon the trial, that such a contract was entered into, so that the plaintiff has in that manner shown you a contract and the terms of that contract; and it remains for him to prove to you by a fair preponderance of testimony that up to the time of his alleged discharge he faithfully performed the work required of him as called for by it. It is not necessary for the defendants to show you that the plaintiff did not fulfill the contract or that the discharge of the plaintiff was lawful; but it is necessary for the plaintiff to show you by a fair preponderance of testimony that the discharge by the defendants was unlawful in so far as the performance of his work is concerned. If the defendants assert, as they do here, that the contract was terminated for any other reason than the lack of faithful performance or of complete compliance therewith on the part of the plaintiff, then it becomes incumbent upon them to establish to your satisfaction by a preponderance of testimony that justification. In other words, all other justification than the lack of faithful performance and failure of complete compliance with the contract becomes the duty of the defendants to establish by a fair preponderance of testimony."

The jury having returned a verdict for the plaintiff, from the judgment entered thereon the defendants took an appeal to the Appellate

Term.   That learned court reversed, upon the ground that it was plain that plaintiff's services were not satisfactory to his employers, and hence the motion to dismiss should have been granted.

[1] The specific defense was not set up in the answer.   That alleged he had left of his own accord; also that he had neglected his duties.   However, when plaintiff produced the written agreement upon which he claimed, I presume it was in evidence for all purposes, and, although not specifically pleaded, that defendants can take advantage of its provisions.   Upon this assumption the issue of fact was presented whether the plaintiff had been discharged because not satisfactory to the defendants.   I think, at best, this was an issue of fact for the determination of the jury.   They had a right to throw Mendelsohn's testimony out, because he was conclusively contradicted at every point where written evidence could be produced.   He denied there was any written contract, and, of course, if there was no written contract, he was not proceeding under its terms when he discharged the plaintiff.   He denied that there had been any preceding contract, and that plaintiff had been in defendants' employ for a year; yet it was conclusively proven that there was a written contract similar in terms, and that plaintiff had been for the year previous in their employ.   Mendelsohn said that plaintiff's work had been entirely satisfactory so long as he was not under a written contract, but that when he got one he thought he owned the place.   It is not strange that the jury refused to credit him, because plaintiff's preceding employment was under the contract, and, as evidence that his work was satisfactory under the written contract, defendants renewed it for a year at an increased wage.   The fact that no such defense is set up in the answer indicates that it was a complete afterthought, and warrants the conclusion that the reason plaintiff was discharged was that it was the slack season and defendants wanted to cut down expenses.

[2] There is no doubt that under the terms of this written contract:

"It is also agreed and understood that said Jacob Diamond shall perform the duties of foreman competently and energetically to the best of his abilities *and complete satisfaction* of his employers"

—it lay within the power of the defendants to discharge the plaintiff because he did not perform his duties to their complete satisfaction, and that it would not be proper to submit to a jury the question whether they ought to have been satisfied.

In Ginsberg v. Friedman, 146 App. Div. 779, 131 N. Y. Supp. 517, Mr. Justice Scott, writing of a similar clause, though perhaps a trifle stronger, inasmuch as it was expressly provided, "And the party of the first part shall be the sole judge thereof," said:

"The only question to be determined was whether or not the defendant was in fact dissatisfied, and discharged the plaintiff for that reason.   If his dissatisfaction was real, and not assumed merely to rid himself of his employé, it was of no consequence whether or not the jury thought that he ought to have been satisfied."

In Summers v. Colver, 38 App. Div. 553, 56 N. Y. Supp. 624, the court said:

"It may be conceded that the employer was the sole judge as to whether the management of the presswork by the plaintiff was 'artistically and financially satisfactory'; but this power, vested in the employer by the contract, must be exercised in good faith. He cannot discharge the plaintiff for the purpose of reducing expenses, and arbitrarily say that he was not satisfied with the artistic and financial management of defendant's pressroom by the plaintiff."

In that case there was a conflict of evidence. The defendant swore that he had some conversation with the plaintiff, in which he called his attention to the unsatisfactory character of the work. The plaintiff testified that in dismissing him the defendant said it was for the purpose of reducing expenses. The court said:

"In short, there were two distinct versions of the controversy"

—and affirmed the judgment entered on the verdict for the plaintiff.

So, in the case at bar, there was a fair question of fact, and defendants must be bound by the reason for the discharge given at the time, as the jury found in accordance with plaintiff's testimony. The jury believed the plaintiff. They evidently thought defendants were not to be credited; and their testimony, as it appears by this record, justifies that opinion.

We think the reversal by the Appellate Term error. The determination appealed from should therefore be reversed, and the judgment of the City Court reinstated, with costs in this court and at the Appellate Term to the appellant. All concur.