AMERICAN MUSIC STORES v. KUSSEL.

Circuit Court of Appeals, Sixth Circuit. March 17, 1916.)

No. 2668.

1. MASTER AND SERVANT ⬤⟶21—CONTRACTS OF EMPLOYMENT—CONSTRUCTION.
    Where an employé agreed to perform the services required of him to the satisfaction of the employer, the employer is justified in discharging him if his services are not satisfactory, and the employer has absolute discretion in determining that question, and is not guilty of a breach of contract,

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

because, though the services rendered should have been satisfactory, they were not.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 20, 21; Dec. Dig. ☞21.]

2. MASTER AND SERVANT ☞21—CONTRACT OF EMPLOYMENT—RIGHT OF EMPLOYER.

Where a contract of employment required the employé to perform the services required of him as manager of a business to the satisfaction of the employer and to devote all his working time, labor, and skill, giving his attendance and best endeavors to the business of the employer, the added clause did not qualify the right of the employer to discharge the employé because his services were not satisfactory by prescribing a criterion regulating whether the services were satisfactory.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 20, 21; Dec. Dig. ☞21.]

3. MASTER AND SERVANT ☞21—CONTRACT OF EMPLOYMENT—CONSTRUCTION—DISCHARGE OF SERVANT.

Where a contract required services of an employé to be to the satisfaction of the employer, the employer is liable for a breach of contract, where he discharged the employé for other reasons, and not because his services were unsatisfactory.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 20, 21; Dec. Dig. ☞21.]

4. MASTER AND SERVANT ☞43—WRONGFUL DISCHARGE—JURY QUESTION.

Whether the services of an employé were satisfactory to an employer, or whether the employer discharged him because of other reasons, *held*, under the evidence, for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 57, 58; Dec. Dig. ☞43.]

5. MASTER AND SERVANT ☞40(2)—CONSTRUCTION—ACTIONS—EVIDENCE.

Where a contract for services required the employé to render services required, evidence of what services were required is admissible in an action for the employer's breach.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 48; Dec. Dig. ☞40(2).]

Appeal from the District Court of the United States for the Western Division of the Southern District of Ohio; Howard C. Hollister, Judge.

Action by Philip Kussel against the American Music Stores. There was a judgment for plaintiff, and defendant brings error. Reversed and remanded.

D. M. Levy and C. P. Johnson, both of Cincinnati, Ohio, for plaintiff in error.

J. L. Meyer, of Cincinnati, Ohio (David N. Rosenbaum, of Cincinnati, Ohio, of counsel), for defendant in error.

Before WARRINGTON and KNAPPEN, Circuit Judges, and TUTTLE, District Judge.

TUTTLE, District Judge. This is an action to recover damages for the alleged wrongful termination by an employer of a contract of employment. The trial court submitted the case to the jury, who rendered a verdict in favor of the plaintiff, and defendant has brought the case to this court on writ of error.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The contract for the alleged breach of which plaintiff (defendant in error) seeks damages was as follows:

"This agreement made this 3d day of August, 1908, by and between the American Music Stores, a corporation organized under the laws of the state of New York, party of the first part, and Philip Kussel, of Cincinnati, Ohio, party of the second part, witnesseth:

"First. The party of the first part agrees to and does hereby employ the party of the second part for a period of two years from the 3d day of August, 1908, as western manager of its music stores, agencies and music departments controlled or operated by it, or which may hereafter be controlled, or operated by it, at a salary of eighteen hundred ($1,800.00) dollars for the first year and two thousand ($2,000.00) dollars for the second year, payable in weekly installments at the end of each and every week during which the party of the second part is actually engaged in the services of the party of the first part.

"Second. The party of the second part hereby accepts said employment during said period and agrees to perform the services required of him as western manager, to the satisfaction of the party of the first part, and to devote all his working time, labor and skill, and give his attendance and best endeavors to the business of the party of the first part, and to the utmost of his skill and power exert himself for the interest, profit, benefit and advantage of said business as western manager thereof.

"Third. The said party of the second part shall not make or enter into any contract, order or obligation of any kind in the name or in behalf of the party of the first part without its previous written authorization.

"Fourth. The party of the first part agrees to reimburse the party of the second part for traveling expenses necessarily expended while traveling in the service of the party of the first part, said traveling expenses not to exceed thirty-five ($35.00) dollars in any one week, however.

"Fifth. The party of the second part agrees during the term of this contract, not to engage his time or attention, or be interested, directly or indirectly, in any other business, nor to compose, write or publish or cause to be published any musical composition, or the words or music thereof, in his own name or that of any other, or to acquire any interest in any composition.

"Sixth. The party of the first part shall have the right to renew this agreement at the expiration thereof for a further period of three years in consideration of the sum of four hundred and fifty ($450.00) dollars to be paid upon the renewal of said agreement to said party of the second part, upon the party of the first part giving to the party of the second part a written notice of its intention to renew the same three months prior to the expiration thereof, and upon the giving of such notice, this agreement and every clause and covenant thereof shall be extended for a further period of three years except that the party of the second part shall be entitled to receive a salary of two thousand five hundred ($2,500.00) dollars a year during the first year of the extended term, two thousand seven hundred and fifty ($2,750.00) dollars and three thousand ($3,000.00) dollars during the second and third years respectively.

"Seventh. It is expressly understood that part of the duties of the party of the second part is to secure departments and stores for the party of the first part and to organize, supervise, operate and take charge of the music departments and stores of the party of the first part in different parts of the United States and Canada as directed by the party of the first part, and the party of the first part may require him to perform such services at any time and place.

"In witness whereof, the party of the first part has caused these presents to be signed in its name by Chas. K. Harris, its vice president, and its corporate seal to be affixed, and the party of the second part has set his hand and seal the day and year first above written."

Plaintiff was discharged before the expiration of the term mentioned in such contract, on the ground that his services were not satisfactory to defendant. Plaintiff admits that he was discharged on such ground, but contends that the right of defendant to terminate this contract depends, not upon the question whether he was actually sat-

isfied, but whether he ought in reason to have been satisfied, with the services performed by plaintiff, and that such question was properly submitted to the jury. The parties agree that their rights are governed by the law of the state of New York, where the contract was made. The trial court charged the jury as follows:

"There are two classes of cases in New York on this subject. In one of these the contracts made were held to gratify taste, to serve personal convenience or individual preference; and in these, if performance is to be to the satisfaction of another, he alone is to decide whether or not he is satisfied, and it is not a question for the court or jury to determine whether or not he ought to be satisfied. He is to determine that question.

"The other class of cases embraces contracts of employment of an ordinary servant to perform work or labor and services of an ordinary nature—of an ordinary business or commercial nature. In these it is held that, 'That which the law will say a contracting party ought in reason to be satisfied with, that it will say he is satisfied with.'

"Now the question is: Under which class of cases does this case come? Whether it is one which would entitle the defendant to say that he is not satisfied with the performance of the plaintiff, and therefore has the right to discharge him, or whether it is one of such character that the law would permit an investigation of the facts and have the jury determine whether or not the performance was reasonably complete and the defendant ought in reason to have been satisfied with it under all the circumstances of the case?

"Now, was the plaintiff (and this is a question for the jury to answer) was the plaintiff, by the terms of this contract and as the parties interpreted it themselves, as you may find from the testimony and evidence in the case, the manager, in the sense that he took the place of his employer and was to use his own judgment and discretion in the management of that business in that territory—a proposition that the defendant must establish by a preponderance of all of the evidence? Or did the word 'manager' mean only that he was to do the things required of him by the defendant, under its direction and subject to its approval, and not use his own judgment and discretion in the management of its business in that territory?

"If you find from the language used and the conduct of the parties that the agreement was that he would manage the defendant's western business in the sense that he should use his own judgment and discretion in acting for them, then I charge you that if the defendant was dissatisfied, for any reason, with his services, and by reason of its dissatisfaction discharged him, then your verdict must be for the defendant, and under those circumstances the plaintiff cannot recover.

"If, upon the other hand, you shall find that his agreed management was not to involve his own judgment and discretion, but that he was to do only what he was required to do by the defendant and under its direction and subject to its approval, then your next inquiry will be whether he so performed the duties required of him that the defendant ought in reason to have been satisfied therewith. If you shall have found that he was not to use his own judgment and discretion in the management of defendant's western business, but was only to do what was required of him by the defendant and under its direction, then you will inquire whether or not in reason the defendant ought to have been satisfied with what he did.

"If you find it ought not, in reason, to have been satisfied—and this the defendant must establish by a preponderance of the evidence—then your verdict will be for the defendant.

"If, upon the other hand, you find that the defendant ought in reason to have been satisfied with what the plaintiff did, then your verdict will be for the plaintiff, and you will assess his damage in the sum of $1,648.50."

Defendant complains of these instructions, by its assignments of error and by arguments in support thereof, presenting contentions which may be conveniently grouped and stated as follows:

(1) That the controlling ultimate question to be determined is

whether defendant was actually dissatisfied with the services of plaintiff.

(2) That the court should have directed a verdict in its favor because plaintiff's own evidence showed that defendant was so dissatisfied, and because there was no evidence tending to show the contrary.

(3) That the court erred in submitting to the jury the question of the construction of the contract involved.

[1] 1. We are clearly of the opinion that the trial court erred in instructing the jury that in cases of this kind involving contracts of employment of an ordinary business or commercial nature, if an employer ought in reason to be satisfied with the services of his employé, he will be held to be satisfied with such services.

The principles applicable are stated in Cyc. as follows:

"Contracts are frequently the subject of litigation in which the promisor agrees to pay for work or goods provided he is satisfied with them. The cases of this character may conveniently be put under two heads: (1) Where the fancy, taste, sensibility, or judgment of the promisor are involved; and (2) where the question is merely one of operative fitness or mechanical utility.

"*Cases of Fancy, Taste, or Judgment.*—The personal thread which runs through agreements of this class has caused a unanimity of judicial opinion that here at least the promisee is practically debarred from questioning the ground of decision on the part of the promisor or investigating its propriety. The courts refuse to say that where a man agrees to pay if he is satisfied with a thing of this kind he can be compelled to pay on proof that some one else is satisfied with it. They recognize that in matters of fancy, taste, or judgment there is no absolute standard as to what is good or bad, and leave each man free to act on his ideas or prejudices as the case may be. Hence we find that where the subject-matter of the contract was a suit of clothes, a bust of the defendant's husband, a portrait of the defendant's daughter, a cabinet organ, a set of artificial teeth, a carriage, a steam heater for a house, a play to be written by an author for an actor, a literary or scientific article for an encyclopedia, a design for a bank note, and horses, it has been held that the question was not one for court or jury to decide, but for the promisor alone. And so it has been held of a contract giving a master a right to discharge a servant if he is satisfied that the servant is incompetent, of a contract to employ a person so long as he is satisfactory, and of a contract to pay for services if they are satisfactory. * * *

"There is no good reason why in case of operative fitness or mechanical utility the same principle of law should not be applied. Although the thing to be done may not involve the feelings, taste, sensibility, or personal opinion of the promisor, yet he, in making the contract, may not have been willing to leave his freedom of choice exposed to any contention or subject to any contingency. He is resolved to permit no right in any one else to judge for him or to pass on the wisdom or unwisdom, the justice or injustice, of his action. Such is his will. He will not enter into any bargain except upon condition of reserving the power to do what others might regard as unreasonable, and, as there is assuredly no law which prevents a person from making contracts of this kind if he chooses, the courts should not hesitate to enforce them. The agreement is, in short, not to make or do a thing which the promisor ought to be satisfied with, and therefore ought to pay for, but to make or do a thing which he is satisfied with. Such a contract may be one-sided in being dependent upon the caprice of one of the parties; it may be an unwise contract to make; but if it is entered into voluntarily, the promisee is bound, and can have no right to ask a court to alter its terms in his favor. This view of the matter is the only logical one, and has been taken in a number of cases." 9 Cyc. 618–620.

In a note on the subject in Ann. Cas. 1915A, 746, appended to the recent case of Schmand v. Jandorf, 175 Mich. 88, 140 N. W. 996, 44

L. R. A. (N. S.) 680, is the following statement, citing in its support many authorities:

"As a general rule, though a contract of employment is for a definite term, if it provides that the services are to be performed to the satisfaction of the employer, it may be terminated by him at any time if he in good faith becomes dissatisfied with the services of the employé, though no real or substantial grounds for dissatisfaction exist."

The case of Schmand v. Jandorf, referred to, involved the construction of a contract quite similar to the instant case, whereby plaintiff was employed as a candy maker. After reviewing previous decisions, Judge Stone concluded as follows:

"Here the contract contained independent provisions. It is clear and explicit in its terms. Had it been the intention that the contract should continue, in case plaintiff should 'perform all of his duties as a candy maker and shall serve said first party diligently and according to his best ability in all respects,' it would have been quite unnecessary to have added the clause as to the satisfaction of the defendant, and it would then have been a question for a jury whether plaintiff had performed his contract or not. To give the 'satisfaction' clause any force, it must refer to the mental condition of the defendant, and not to the mental condition of a court or jury. We think that the construction of the contract by the circuit judge was the correct one. Whatever of apparent hardship there may be in such a contract, it was one of the parties' own making. As was said by Justice Steere in the Isbell Case [170 Mich. 304, 136 N. W. 457]: 'If parties voluntarily assume the obligations and hazards of a satisfaction contract, their legal rights are to be determined and adjudicated according to its provisions. It is elementary that courts cannot make contracts for parties, nor relieve them of the consequences of their contracts, however ill-advised.'"

The "Isbell Case," mentioned, is Isbell v. Anderson Carriage Co., 170 Mich. 304, 136 N. W. 457, and involved the alleged wrongful termination of a contract giving to plaintiff the exclusive agency for the sale of the electric automobiles made by defendant; the manner of conducting the details of such agency to be at all times satisfactory to defendant. Among other things, the court, speaking by Mr. Justice Steere, said:

"Contracts of this general character, known as 'satisfaction contracts,' in which one party agrees to perform his part to the satisfaction of the opposite party, are fruitful and frequent sources of litigation, owing to the disappointments they so often bring to the party who has taken the chance of performing satisfactorily, and the difficulty of ascertaining what really constitutes satisfaction, which primarily is but a mental process. Such contracts are enforceable, however, to the extent the intention of the contracting parties can be ascertained. If parties voluntarily assume the obligations and hazards of a satisfaction contract, their legal rights are to be determined and adjudicated according to its provisions. It is elementary that courts cannot make contracts for parties nor relieve them of the consequences of their contracts."

As was said by Judge Brown in Campbell Printing Press Co. v. Thorp (C. C.) 36 Fed. 414, 1 L. R. A. 645:

"The true doctrine is expressed in McCarren v. McNulty, 7 Gray [Mass.] 139, 141: 'It may be that the plaintiff was injudicious or indiscreet in undertaking to labor and furnish materials for a compensation, the payment of which was made dependent upon a contingency so hazardous or doubtful as the approval or satisfaction of a party particularly in interest. But of that he was the sole judge. Against the consequences resulting from his own bargain the law can afford him no relief; having voluntarily assumed the obligations

and risk of the contract, his legal rights are to be ascertained and determined solely according to its provisions.'

"Other cases extend the same doctrine to contracts for the performance of labor, or for the support of another to his satisfaction. In such case, the employer may be wholly dissatisfied with the character of the service rendered, or the beneficiary made exceedingly uncomfortable by his surroundings, without in either case being able to assign what the law would recognize as a sufficient reason for his dissatisfaction. It makes him, however, the sole judge of the reasonableness of his own discontent."

In view of the concession of both parties to the effect that this contract must be construed according to the law of the state of New York, we refrain from further discussion of the decisions, which are numerous and of which those already cited are typical of courts outside of that state. Many of them are collected in 1 Labatt on Master and Servant (2d Ed.) § 198 et seq. A careful examination of all of the decisions of the courts of New York which we have been able to discover convinces us that they are not opposed to, but are in accord with, those from which we have quoted.

In the case of Tyler v. Ames, 6 Lans. (N. Y.) 280, involving an employment contract which provided that plaintiff "should serve as defendant's agent in the sale of engines manufactured by defendant, for the term of one year, if plaintiff could fill the place satisfactorily," the plaintiff insisted that he was discharged in violation of the contract of hiring, and that he was entitled to recover his wages for the residue of the year. In overruling this contention the court said:

"It was for defendant to determine when plaintiff failed to fill the place of agent satisfactorily, and I know of no one who is authorized to review his decision.

"The word 'satisfactorily' refers to the mental condition of the employer, and not the mental condition of a court or jury. The right of determining whether the plaintiff filled the place of agent satisfactorily must, from the nature and necessity of the case, belong to the person whose interests are directly affected by the plaintiff's action. To require the employer, under such a contract, to prove that plaintiff did not fill the place satisfactorily, would be to require of him an impossibility, unless his own oath was taken as to his mental status on the subject. If he is required to prove facts and circumstances that would justify him in feeling dissatisfied with the manner plaintiff filled his office, it would be annulling this clause of the contract, as, without such a clause, he would have the right to dismiss the plaintiff if he did not properly perform his duties."

In Spring v. Ansonia Clock Co., 24 Hun (N. Y.) 175, it appeared that plaintiffs and defendant entered into an agreement whereby plaintiff agreed to work for the defendant as clock-case maker, for one year, provided his work and services should be to defendant's satisfaction. Before the expiration of such year, plaintiff was discharged without the assignment of any cause, except he was not the man the company wanted. He brought action to recover the damages sustained by him by reason of such discharge, and at the close of the plaintiff's testimony on the trial the complaint was dismissed. On appeal by plaintiff the judgment was affirmed; the court saying, among other things:

"Without the provision for that purpose introduced in the contract, the law secured to the defendant the right to discharge the plaintiff at any time for cause, and it must be assumed that the provision on that subject was inserted

in the contract to enable the defendant to exercise more power in discharging than could have been exerted in its absence. The contract of the defendant to pay is subject to the proviso that the services shall be to its satisfaction, and that fact is subject to no determination but the will of the company expressed through the proper agency. The determination of the question whether the services of the plaintiff under this contract were satisfactory, belonged entirely to the company, subject to no control from the courts. The will of the company is the only tribunal to which the question can be referred."

In Snyder v. Greenhut & Co., 71 Misc. Rep. 117, 127 N. Y. Supp. 1068, the plaintiff sued to recover damages for the alleged breach of a contract of employment. The contract was in writing, and under it the defendant employed the plaintiff as buyer and manager of its shoe department. By the terms of the contract, the plaintiff agreed to devote his entire time and attention and to give satisfactory service to said Greenhut & Co. in the conduct and management of the department above mentioned. The evidence established the fact that the plaintiff entered upon the discharge of his duties under the contract, and that the defendant was not satisfied with the results which the plaintiff produced, and terminated his employment. The trial justice left to the jury the question as to whether or not the services the plaintiff performed were satisfactory to the defendant, or whether or not his services were executed with such skill and with such care as a reasonable man might be satisfied with. To this charge of the court the defendant excepted, and in reversing the judgment the court said:

"The charge tendered an erroneous issue to the jury, and prescribed a test for determining whether the defendant was justified in discharging the plaintiff, different from that specified in the contract which both parties had signed."

In Zeiss v. American Wringer Co., 62 App. Div. 463, 70 N. Y. Supp. 1110, the action was founded upon an alleged breach of contract, entered into between the plaintiff and the defendant, employing plaintiff to work for the defendant as its managing agent in a certain county "for and during such times as the business relations between the parties hereto shall be mutually satisfactory." The defendant reserved the right to appoint other agents in such county if the plaintiff failed to canvass such territory to its satisfaction, and it agreed to protect him in said territory and give him the exclusive right to it "as long as said Zeiss shall conduct a faithful and efficient canvass." It was held that the agreement to protect the plaintiff and give him the exclusive right in the county of Richmond as long as he conducted a faithful and efficient canvass must be read in connection with the provision immediately preceding it, which gave the defendant the right to appoint other agents if the plaintiff failed to canvass the territory to its satisfaction; the court saying:

"The agreement to protect the plaintiff and give him the exclusive right is subject to the proviso that the plaintiff's canvass shall be satisfactory. That fact is made the test of the faithful and efficient canvass upon which the protection of the plaintiff and his exclusive right depend.

"The agreement is clearly within the rule laid down in Tyler v. Ames, 6 Lans. [N. Y.] 280, where the contract was to employ an agent for a year if he 'could fill the place satisfactorily,' and the court said: 'It was for defendant to determine when plaintiff failed to fill the place of agent satisfactorily, and I know of no one who is authorized to review his decision.' "

In Diamond v. Mendelsohn, 156 App. Div. 636, 141 N. Y. Supp. 775, it was said:

"There is no doubt that under the terms of this written contract, 'It is also agreed and understood that said Jacob Diamond shall perform the duties of foreman competently and energetically to the best of his abilities and complete satisfaction of his employers,' it lay within the power of the defendants to discharge the plaintiff because he did not perform his duties to their complete satisfaction, and that it would not be proper to submit to a jury the question whether they ought to have been satisfied."

In Messmer v. Boettger Silk Finishing Co., 160 App. Div. 519, 145 N. Y. Supp. 560, the plaintiff was employed by defendant as a silk finisher under a written contract whereby the plaintiff agreed that the work done by him should be done in skillful and competent manner, satisfactory to the trade and customers of the defendant. Plaintiff was discharged during the term of the contract and sued for damages. One defense was that his work had not been satisfactory to defendant's customers. In reversing the judgment for plaintiff, the court said:

"The trial court held that it was not sufficient to show that defendant's customers were dissatisfied, but that defendant must go further and show that cause for dissatisfaction actually existed. This was erroneous. The plaintiff had signed a contract by which the term of his employment was expressly made dependent upon the satisfaction or dissatisfaction of defendant's customers. If they became dissatisfied, that of itself was sufficient justification for plaintiff's discharge. Crawford v. Mail & Express Pub. Co., 163 N. Y. 404 [57 N. E. 616]."

In Smith v. Robson, 148 N. Y. 252, 42 N. E. 677, involving a contract between a theatrical manager and an actor, whereby it was agreed that if the former felt satisfied in good faith that the latter was incompetent he might discharge him, it was said:

. "It was doubtless intended to give the defendant a wide discretion. The grounds which might exist for reasonable dissatisfaction on the part of the defendant could not readily be formulated in advance so as to cover all the contingencies. It was reasonable that the defendant should be in a position, if in good faith he felt that the plaintiff did not come up to the requirements of the situation, to discharge him. If the defendant had shown to the satisfaction of the jury that acting in good faith he had discharged the plaintiff because he was dissatisfied, and that his action was not arbitrary and capricious, he could not have been held liable."

In Crawford v. Mail & Express Publishing Co., 163 N. Y. 404, 57 N. E. 616, plaintiff sought to recover damages for an alleged breach of the contract by which he was employed for a definite term to write newspaper articles for defendant; it being provided that his services should be satisfactory to defendant. He was discharged on the ground that such services were not satisfactory, and in reversing a judgment on a verdict awarded him the Court of Appeals said:

"The plaintiff did not agree to satisfy a court or jury, but undertook to satisfy the publishers. It was their taste, their fancy, their interest and their judgment that was to be satisfied."

We have examined the cases cited by plaintiff and are of the opinion that they do not sustain the views expressed by the trial court. We think that they go no further in that direction than to hold that in

this class of cases the dissatisfaction of the employer, to justify him in discharging the employé, must be not only alleged but real.   Thus in Hydecker v. Williams, 18 N. Y. Supp. 586, cited by counsel for plaintiff, the Court of Common Pleas said:

> "It may be conceded that the employer was the sole judge as to whether the management of the press work by the plaintiff was 'artistically and financially satisfactory'; but this power, vested in the employer by the contract, must be exercised in good faith. He cannot discharge the plaintiff for the purpose of reducing expenses, and arbitrarily say that he was not satisfied with the artistic and financial management of defendant's press room by the plaintiff."

And in Summers v. Colver, 38 App. Div. 553, 56 N. Y. Supp. 624, also cited by plaintiff, it was said:

> "On this appeal from a judgment of a district court, the only point presented for serious consideration is whether a servant engaged for a determinate period, 'so long as he shall satisfactorily perform his duties,' may be discharged at the mere volition of the master.  For the jury found, upon adequate evidence, that the servant—plaintiff's assignor—did in fact perform his duties to the satisfaction of the defendants, the masters, and that they dismissed him only because 'business was dull,' and 'they could not afford to go on with the contract.'  None of the citations sustains the proposition upon which appellants must rely for reversal of the judgment, namely, that although an employé perform the condition, by breach of which only his employment may determine before expiration of its stipulated period, he may be discharged meantime at the will of the employer.  The proposition is a self-evident absurdity."

To the same effect are Fuller v. Downing, 120 App. Div. 36, 104 N. Y. Supp. 991; Diamond v. Mendelsohn, 156 App. Div. 636, 141 N. Y. Supp. 775; and Smith v. Robson, supra.

We think that the rule must be considered well settled to the effect that when an employer and an employé make a contract whereby the latter agrees to perform the services required of him to the satisfaction of the former, the failure of such employé to satisfy such employer is a breach of such contract.

Of course, if it appears, or if there is evidence fairly tending to prove, that the employer in such a case really is satisfied, but discharges the employé on some other ground, obviously the rule in question has no application.  So, if the employer alleges dissatisfaction but there is evidence fairly tending to prove that such alleged dissatisfaction did not in fact exist, an entirely different question is presented.  Thus, if A. has agreed to perform certain specific work to the satisfaction of B., proof that such work has been properly done and accepted by B. may be evidence tending to show that B. was really so satisfied, notwithstanding any statement by him to the contrary.  In such a case we think that the question of fact is not whether B. ought, in reason, to be satisfied, because that was not what the parties agreed; but that the question is, "Was B. really satisfied?"  We cannot avoid the conviction that the language of the decisions apparently holding otherwise is pure dictum, and that such decisions, while correct in what they decide, are incorrect in the reason assigned for so deciding.

Thus, as pointed out in Crawford v. Mail & Express Publishing Co., supra, in Duplex Safety Boiler Co. v. Garden, 101 N. Y. 387,

4 N. E. 749, 54 Am. Rep. 709, the contract called for "the repairing of a boiler under a stipulation that it should not leak and that the owner should be satisfied that it was a success," while that in Doll v. Noble, 116 N. Y. 230, 22 N. E. 406, 5 L. R. A. 554, 15 Am. St. Rep. 398, provided "that the woodwork in a house should be polished, stained, and rubbed in the best workmanlike manner under the supervision of a superintendent named, to the satisfaction of the owner," each being "a case of a completed contract in which work has been performed in an ordinary business." In the case first named, attention is called, in the opinion, to the fact that "the work required was specified and was completed; the defendants made it available and continued to use the boilers without objection or complaint," and it might well be argued that this was evidence fairly tending to show that the alleged dissatisfaction of defendants was not genuine but only a pretext for avoiding a just debt. And in Doll v. Noble, supra, it was merely held that defendant "must not attempt to defeat a just claim by arbitrarily and unreasonably saying he is not satisfied. The work must be done according to the contract." Neither of these decisions, in our opinion, is in conflict with the views which we have expressed. No other case has been cited requiring consideration in this connection.

[2] Finally, it is urged that the provision in the contract requiring the performance of the services to the satisfaction of defendant must be regarded as qualified by the addition of the clause, "and to devote all his working time, labor and skill, and give his attendance and best endeavors to the business of the party of the first part, and to the utmost of his skill and power exert himself for the interest, profit, benefit and advantage of said business as western manager thereof."

Counsel for plaintiff rely, in this connection, on the case of Doll v. Noble, supra, from the contract in which we have quoted.

We think that there is a marked distinction between the use of the phrase "in the best workmanlike manner" and that of the clause found in the present contract. The former phrase prescribes a definite test of performance of the merely mechanical services involved in that case, and it might be urged with much force that so long as this work was done in the best workmanlike manner the party for whom it was done should, and would, be satisfied. In the present case, however, neither were the services required of a kind to be subjected to such a test nor, in our opinion, can the clause mentioned be considered as fixing a test which an employer would be likely to intend in such a case. Not only is it indefinite and difficult of application, but it is incomplete and ignores the elements of efficiency, ability, and success in producing results, so essential to the satisfactory performance of such services. Under such a test, an employer would be unable to terminate such employment until he was able to prove that his employé was not devoting all his working time, labor and skill to his business, or not exerting himself to the utmost of his skill and power for such business, regardless of his inefficiency, lack of ability, and failure to produce results. We think that such an intention should not be ascribed, by implication, to defendant. On the contrary, it seems to us that the words in question were intended merely to emphasize the minimum

requirement expected of plaintiff, and that the failure of defendant to specifically require more, such as the "competent," "skillful," or "proper" performance of his duties by plaintiff is cogent evidence of an intention to insist on their being rendered to his "satisfaction," which would, of course, render any other such requirement unnecessary.

In many of the cases which we have cited and quoted the contract contained qualifying words of the kind mentioned, and yet in no instance were they held to limit or modify the effect of the stipulation requiring the satisfaction of the employer concerned.

For the reasons stated it is clearly apparent, both on principle and on authority, that the right of defendant to discharge plaintiff depended, not upon the question whether it ought in reason to have been satisfied with his services, but upon the question whether it was, in fact, and therefore in good faith, satisfied with such services. It results that the trial court was in error in instructing the jury otherwise, and that for this reason the judgment must be reversed and a new trial granted.

[3, 4] 2. What we have said renders it unnecessary to decide the other questions presented. We deem it proper, however, to add that while the defendant in this case had the right to terminate plaintiff's employment in case of actual, good-faith dissatisfaction with his services, no right existed to terminate it otherwise; and that it is open to plaintiff to question the fact of good-faith dissatisfaction, provided there is testimony reasonably tending to dispute defendant's assertion that it was dissatisfied.

We think that the record on the former trial was such as to permit the raising of this question of fact. Taking into account the defendant's previous expressions, of not only satisfaction with but pronounced commendation of plaintiff's services in the early period of the employment, the ten cent. store's competition and defendant's attitude toward it, and the fact that during the long period which elapsed from plaintiff's discharge until the trial, defendant had put no one in plaintiff's territory, but had done the work entirely by correspondence from the home office, there was, in our judgment, testimony tending to show that defendant, through causes for which plaintiff was not responsible, decided that it was to its interest to do its business on a different plan than it had in mind when plaintiff was employed, and that the discharge was made not because of dissatisfaction with plaintiff's services, but because of such change of method of doing business.

[5] 3. As the contract provided for the performance by plaintiff of the services required of him by defendant, it was, of course, proper to introduce evidence to show what services were so required. The meaning and effect of the contract we have already indicated.

For the error pointed out, the judgment is reversed, and a new trial granted, with costs to plaintiff in error.