THERON C. CRAWFORD, Respondent, *v.* THE MAIL AND EXPRESS PUBLISHING COMPANY, Appellant.

MASTER AND SERVANT — OPTION TO TERMINATE CONTRACT OF EMPLOY-
MENT.  A contract employing one for a period of two years to write
articles for a newspaper on specified subjects at a fixed rate of compensa-
tion per week, so long as his services "shall be satisfactory to the pub-
lishers," and in case they are not he shall be entitled to one week's notice,
without any provision limiting the publishers in the exercise of their judg-
ment, gives them the right to terminate the employment upon a week's
notice, at any time they may elect, if for any reason his services are
unsatisfactory.

*Crawford* v. *Mail & Express Publishing Co.*, 22 App. Div. 54, reversed.

(Submitted April 18, 1900; decided June 12, 1900.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the first judicial department, entered
November 29, 1897, modifying, and affirming as modified, a
judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*William Irwin* for appellant.  The motion to dismiss the
complaint should have been granted, and the verdict rendered
was against the weight of evidence.  (*Tyler* v. *Ames*, 6 Lans.
280; *Glenny* v. *Lacy*, 1 N. Y. Supp. 513; *Brand* v. *Good-
win*, 15 Daly, 456; *Spring* v. *Ansonia Clock Co.*, 24 Hun,
175; *Johnson* v. *Brindseil*, 15 Daly, 492; 16 Daly, 232;
*Glyn* v. *Miner*, 6 Misc. Rep. 637; *D. S. B. Co.* v. *Garden*,
101 N. Y. 387; *Doll* v. *Noble*, 116 N. Y. 231; *Hydecker* v.
*Williams*, 45 N. Y. S. R. 637; *E. V. Co.* v. *T. R. R. Co.*,
66 Wis. 218.)

*Frederic R. Kellogg* for respondent.  To permit the exer-
cise of an option to terminate a contract of employment if the
employer is dissatisfied with the services rendered, there must,
in all cases be actual, and not mere pretended, dissatisfaction
with such services; and it is not enough that the employer

may for some other reason desire to terminate the contract. (*D. S. B. Co.* v. *Garden*, 101 N. Y. 387; *Doll* v. *Noble*, 116 N. Y. 230; *Hydecker* v. *Williams*, 45 N. Y. S. R. 637; *Grinnell* v. *Kiralfy*, 55 Hun, 422; *Smith* v. *Robson*, 148 N. Y. 255; *Glenny* v. *Lacy*, 16 N. Y. S. R. 801; *Summers* v. *Colver*, 38 App. Div. 553; *E. V. Co.* v. *T. R. R. Co.*, 66 Wis. 218; *Manfg. Co.* v. *Brush*, 43 Vt. 528; *Silsbe* v. *Chico*, 24 Fed. Rep. 893.) The question as to whether such actual dissatisfaction existed was one of fact and not of law, and was for the jury to decide. (*E. V. Co.* v. *T. R. R. Co.*, 66 Wis. 218; *Crawford* v. *M. & E. Pub. Co.*, 9 App. Div. 481.) The evidence in the case was not only ample to support the finding of the jury, but is almost conclusive in favor of the plaintiff's contention. (*Goldsmith* v. *Coverly*, 31 Abb. [N. C.] 149; *C. N. Bank* v. *Diefendorf*, 123 N. Y. 191; *Joy* v. *Diefendorf*, 130 N. Y. 8; *F. C. Nat. Bank* v. *Grover*, 88 Hun, 4; *S. E. Co.* v. *D. Establishment*, 12 Del. 71; *M. C. Works* v. *Schad*, 38 Hun, 71; *Merrill* v. *C. C. Co.*, 114 N. Y. 216; *Kennedy* v. *McAllaster*, 31 App. Div. 458.) The nature of the contract in question was such that, in order to permit its termination, there must have been not only dissatisfaction, but a reasonable basis for it. (*D. S. B. Co.* v. *Garden*, 101 N. Y. 387; *Smith* v. *Robson*, 148 N. Y. 252.)

HAIGHT, J.   This action was brought to recover damages for a breach of contract of employment. On the 24th day of August, 1892, the plantiff wrote the defendant a letter in which he tendered his services to *The Mail and Express* for a period of two years, agreeing to write for publication in the paper not less than two columns a week on the progress of the world or other appropriate subjects, and in the line of the policy of the paper, at the compensation of fifty dollars per week, but reserving to himself the right to pursue his general business other than that of a literary character, and providing that "my services shall be satisfactory to the publishers, and in case they are not I shall be entitled to one week's notice."

The offer thus presented by the letter was accepted by Shepard, as president of the defendant, and the plaintiff entered upon the service contracted for and continued to furnish articles for *The Mail and Express* until the 31st day of March, 1893, at which time there was delivered to him a letter, written by the secretary of the defendant, in which he was directed to discontinue his articles for the paper after a week's notice, in accordance with his agreement  This letter was written by the secretary pursuant to a resolution adopted at a meeting of the board of directors of the defendant, in which they unanimously resolved that the plaintiff's services be discontinued under the contract upon the ground that his services were not satisfactory.  On the 12th day of April, thereafter, the plaintiff inclosed another article in manuscript to the defendant for publication under his contract, but the same was returned to him by the secretary of the company with a letter, in which reference was made to the former letter, discharging him and distinctly stating that the reason for the termination of his employment was that his services were unsatisfactory to the publishers and that his contract " was and is terminated for such cause."  At the conclusion of the evidence taken upon the trial, the defendant, among other things, moved for a dismissal of the complaint upon the ground that, under the contract for employment, the defendant reserved the right to discharge him at any time if his services were unsatisfactory upon giving one week's notice.  The motion was denied and an exception taken. The case was submitted to the jury and damages were awarded at the rate of $50 per week for the balance of the term of two years.

We think the motion should have been granted and that the exception taken to its denial requires a reversal of the judgment.  The contract of employment, when carefully read, discloses with reasonable clearness what, we think, was the purpose and understanding of the parties.  As we have stated, it was in the form of a letter in which the plaintiff offers his services for the period named at the rate of $50 a

week. It was evidently his purpose and intention to bind himself to serve the company for that period of time for the consideration expressed. But, on the part of the publishers of *The Mail and Express,* it is very clear that they did not intend to be bound for a period longer than his services proved satisfactory, and that they expressly reserved the right to discharge him upon a week's notice. It is also apparent from a reading of the contract that the employment was not intended to be that of an ordinary servant to perform work, labor and services of an ordinary business or of a commercial nature. He was not called upon to perform the work of an ordinary reporter, writing up the general news of the day, but contracted to prepare articles on the progress of the world or other appropriate subjects in the line of the policy of the paper for the purpose, as expressed, of promoting the general interests of the paper, of aiding in its circulation and the obtaining of advertisements, by improving the quality of its contents. The evident design was that the articles should be interesting and attractive, involving art, taste, fancy and judgment. There is no provision in the contract in any manner limiting the publishers in the exercise of their judgment as to what is satisfactory, but if his services are unsatisfactory for any reason they are given the right to terminate the employment upon a week's notice, at any time they so elect.

In the case of *Smith* v. *Robson* (148 N. Y. 252) an important limitation is found in the contract that is not embraced in this. In that case the master had the power to discharge the employee if *in good faith* the master shall be satisfied of the incompetency of the employee, and we held that the question of good faith was one of fact, thus distinguishing it from the cases in which contracts are made to gratify taste, to serve personal convenience or individual preferences. An article printed in a paper or magazine may please one person and displease another. It may gratify the taste of one and become the subject of criticism and ridicule on the part of another. The plaintiff did not agree to satisfy a court or jury, but undertook to satisfy the publishers. It was their taste, their

fancy, their interest and their judgment that was to be satis-
fied.  It further appears that the plaintiff was paid in full to
the time of his discharge and for the week for which the notice
was given, and that the time for which the plaintiff seeks to
recover in this action the contract was executory.  It is not,
therefore, a case of a completed contract in which work has
been performed in an ordinary business, commercial or other-
wise, such as the repairing of a boiler under a stipulation
that it should not leak and that the owner should be satisfied
that it was a success, or that the woodwork in a house should
be polished, stained and rubbed in the best workmanlike
manner under the supervision of a superintendent named, to
the satisfaction of the owner.  (*Duplex Safety Boiler Co.* v.
*Garden,* 101 N. Y. 387; *Doll* v. *Noble,* 116 N. Y. 230.)
We, consequently, think this case is brought within the line
of the authorities distinguishable from the above cases, but
recognized in them, involving taste, fancy, interest, personal
satisfaction and judgment.  (*Zaleski* v. *Clark,* 44 Conn. 218;
*Gibson* v. *Cranage,* 39 Mich. 49; *Hoffman* v. *Gallaher,* 6
Daly, 42; *Brown* v. *Foster,* 113 Mass. 136; *Tyler* v. *Ames,*
6 Lans. 280; *Glenny* v. *Lacy,* 16 N. Y. S. R. 798; *Brand*
v. *Godwin,* 15 Daly, 456, 465; *Spring* v. *Ansonia Clock Co.,*
24 Hun, 175; *Johnson* v. *Bindseil,* 15 Daly, 492; *S. C.,* 16
Daly, 232; *Glyn* v. *Miner,* 56 N. Y. S. R. 341; *Hart* v. *Hart,*
22 Barb. 606; *Rossiter* v. *Cooper,* 23 Vt. 522; *Provost* v.
*Harwood,* 29 Vt. 219.)

The judgment should be reversed and a new trial ordered,
with costs to abide the event.

Vann, J. (dissenting).  I dissent.  While the trustees of
the defendant had the right to discharge the plaintiff if they
were actually dissatisfied with his services, even if they had
no reasonable grounds therefor, they had no right to discharge
him because they wished to get rid of their contract for some
reason other than that named therein as the cause for dis-
charge.  If there was an honest dissatisfaction with his serv-
ices, whether it was reasonable or not, the right to discharge

was absolute; but if the services were in fact satisfactory, and the dissatisfaction, as expressed, was dishonest and a mere pretense to cover a change of management, or to effect an ulterior purpose, there was no right to discharge. The question whether the trustees ought to have been dissatisfied does not arise, but simply whether they were dissatisfied, not with the entire situation, but with the plaintiff. Any evidence which, when reasonably viewed, tended to show bad faith on their part, and that their alleged dissatisfaction was a pretense and not a fact, presented a question for the jury. In *Smith* v. *Robson* (148 N. Y. 252) the words " good faith " were written by the parties into a somewhat similar contract, but those words are read by the law into all stipulations which permit one party to terminate a contract if he is not satisfied with the services of the other.

For seven months the plaintiff performed the contract on his part without complaint or question from the defendants. Shortly before the death of Col. Shepard, the president of the board of trustees, he assigned the plaintiff to a duty of great importance and responsibility. One week after Col. Shepard's death, the surviving trustees caused the defendant's secretary to write to the plaintiff "that the death of Col. Shepard has necessitated some changes in our work upon this paper. Personally, the relations between the men on the paper, myself included, have been of the most friendly kind, and any break in these relations necessarily brings painful feelings ; but *some changes are necessary,* and, after consultation, it has been deemed best to *make these changes at once.* \* \* \* It is unnecessary for me to say that Mr. Alexander and myself, and the other members of the staff, are loath to send you this order, but *find it necessary in the pursuit of our work.*" The discharge of the plaintiff followed, but with no expression, or even suggestion, of dissatisfaction with his services.

When a master discharges his servant in a written communication which purports to give the reason, the presumption arises that the reason given is the only one existing or

relied upon. When the trustees notified the plaintiff of his discharge, they said it was because some changes in their work upon the paper were necessary. They made no claim that the plaintiff's work was unsatisfactory, but summarily discharged him because a change of method had become necessary owing to the death of Col. Shepard. Whatever the trustees said to the plaintiff afterward, or even testified to upon the trial, may have been an afterthought, and may or may not have been the real reason for their action. Their letter of dismissal, under the circumstances, permitted the inference that they discharged the plaintiff for a reason not named in the contract, nor permitted by law. Even if the evidence to rebut this inference was very strong, a question of fact arose for the jury to decide. It was, therefore, proper for the trial court to ask the jury to find "whether there was a *bona fide* dissatisfaction, or whether there are marks to your mind sufficient to make you believe that the discharge was a fictitious thing, not really based upon any dissatisfaction." The jury found for the plaintiff upon this question, the Appellate Division affirmed the finding, and I think their judgment should stand.

O'BRIEN, BARTLETT, MARTIN and LANDON, JJ., concur with HAIGHT, J.; PARKER, Ch. J., concurs with VANN, J.

Judgment reversed, etc.