## LIMA LOCOMOTIVE & MACHINE CO. v. NATIONAL STEEL CASTINGS CO.

(Circuit Court of Appeals, Sixth Circuit.    July 17, 1907.)

No. 1,652.

1. CONTRACTS—MUTUALITY.

Where plaintiff accepted defendant's proposition to furnish all plaintiff's requirements in steel castings for the remainder of the year, at prices mentioned, defendant was obligated to take from plaintiff all castings which their business should require, and the contract was therefore not void for want of mutuality.

[Ed Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 32.]

2. CUSTOMS AND USAGES—WRITTEN CONTRACT—EXPLANATION—CONTRADICTION

While evidence of custom and usage is admissible to explain the meaning of words and phrases used in a written contract and to annex thereto certain incidents which circumstances indicate the parties intended, when the words used do not necessarily exclude the operation of such custom or usage, evidence thereof is inadmissible to contradict the contract.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Customs and Usages. § 34.]

3. CONTRACTS—PERFORMANCE—EXCUSE.

Nothing will excuse the performance of a contract, except an act of God or the public enemy.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, §§ 1409-1417.]

4. CUSTOMS AND USAGES — NONPERFORMANCE OF CONTRACT — ACCIDENT — UNAVOIDABLE DELAY.

Where plaintiff had knowledge that its furnace was working badly, and that normal results could not be relied on, at the time it contracted to

supply defendant's requirements of steel castings for the remainder of the year, the subsequent necessity to shut down its plant for repairs was not an "accident" or an unavoidable cause of delay, within a custom or usage among manufacturers of steel castings that all contracts are subject to the contingency of accidents and unavoidable delays.

5. CONTRACTS—DISCHARGE BY BREACH.

Plaintiff having contracted in April, 1902, to furnish defendant's requirements of steel castings for the remainder of the year, furnished the same until August 1st, when, because of the necessity of repairs, it was compelled to close its plant until November 19th, during which time defendant was compelled to withdraw its patterns from plaintiff and place them with other founders, having made arrangements on the best obtainable terms to obtain what plaintiff was unable to furnish. *Held*, that defendant was not bound to cancel such new contracts and return its patterns to plaintiff on notice given in October that plaintiff's plant would be in operation, ready to turn out work under the contract on or before November 19th.

In Error to the Circuit Court of the United States for the Western Division of the Northern District of Ohio.

Action upon account for goods sold and delivered, and cross-action for damages for breach of contract. Jury waived. The trial judge made a finding of facts and a general finding for the plaintiff for the full amount of the account and against the defendant upon its cross-petition.

On April 10, 1902, the National Steel Castings Company made in writing the following proposition to the Lima Locomotive & Machine Company: "Gentlemen: We make the following proposition for furnishing all your requirements in steel castings for the remainder of the present year at the prices mentioned below, f. o. b. cars at Montpelier, the terms to be thirty days net. You agree to furnish us on or before the 15th of each month the tonnage that you wish to order during the following month. We agree to fill your orders as specified to the amount of this tonnage, and to make such deliveries as you require." Then followed a schedule of steel castings and prices per pound. This was accepted in writing by indorsing thereon, at the foot of the proposition, "Accepted April 10, 1902," and duly signed by the Lima Company. This contract the defendant set out in its cross-petition and averred: First, that the castings for which the plaintiff had sued were ordered and supplied under this contract; second, that the plaintiff had failed and refused, though requested, to supply it with other castings necessary to meet the requirements of its business, and that defendant in consequence had been obliged to contract for same with other founders and had paid for the castings so procured $5,498.24 over and above the contract price with plaintiff.

The defenses to the cross-petition were: First, that the contract was void for want of mutuality; second, that the furnace of the plaintiff broke down through an "unavoidable accident," and the plant closed for repairs from about August 1 to November 19, 1902, and that for this reason the plaintiff was excused from carrying out its agreement, if valid, during that time, and that there was an universal custom among manufacturers of steel castings, well known to defendant, that all contracts were subject to the contingency of strikes, accidents, and unavoidable delays, and that this contract was entered into with reference to this custom; third, that notice was given the defendant that the furnace of the plaintiff would resume operation about November 19th, but defendant did not furnish plaintiff with patterns by which it might have supplied defendant's November and December requirements.

Henry W. Seney, for plaintiff in error.

Lloyd Williams, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

After making the foregoing statement of the case, LURTON, Circuit Judge, delivered the opinion of the court.

1. We find ourselves unable to agree with the learned circuit judge in respect to the nonmutuality of the contract by which the plaintiff agreed to supply all of the "requirements" of the defendant's business for the remainder of the year 1902. The defendant was engaged in an established manufacturing business which required a large amount of steel castings. This was well known to the plaintiff, and the proposition made and accepted was made with reference to the "requirements" of that well-established business. The plaintiffs were not proposing to make castings beyond the current requirements of that business, and would not have been obligated to supply castings not required in the usual course of that business. By the acceptance of the plaintiff's proposal, the defendant was obligated to take from the plaintiff all castings which their business should require. The contract, if capable of two equally reasonable interpretations, should be given that interpretation which will tend to support it and thus carry out the presumed intent of both parties. The second and third paragraphs must be read in the light of the first. Thus read, there is no ground for doubting that the words the "tonnage you wish to order," and "such deliveries as you may require," have reference to the established "requirements" of the business for the following "month," and the deliveries of the tonnage thus estimated. The contract falls under and is governed by the case of Loudenback Fertilizer Co. v. Tennessee Phosphate Co., 121 Fed. 298, 58 C. C. A. 220, 61 L. R. A. 402, where the contract was to sell to a manufacturer of fertilizer "its entire consumption of phosphate rock" for a term of five years. In that case we held that the contract was mutual, and the buyer under obligation to take its entire requirement of phosphate rock from the seller. Concerning the definiteness of such a contract, we said:

"A contract to buy all that one shall require for one's own use in a particular manufacturing business is a very different thing from a promise to buy all that one may desire, or all that one may order. The promise to take all that one can consume would be broken by buying from another, and it is this obligation to take the entire supply of an established business which saves the mutual character of the promise."

To the same effect and directly in point are the cases of Cold Blast Transp. Co. v. Kansas City Bolt & Nut Co., 114 Fed. 77, 52 C. C. A. 25, 57 L. R. A. 696, Minnesota Lumber Co. v. Whitebreast Coal Co., 160 Ill. 85, 43 N. E. 774, 31 L. R. A. 529, and Wells v. Alexandre, 130 N. Y. 642, 29 N. E. 142, 15 L. R. A. 218.

2. Among the findings of fact was the following:

"(19) Throughout the United States it is a custom among manufacturers of steel castings, such as were to be manufactured for defendant by plaintiff, to make all agreements contingent upon strikes, accidents, and other unavoidable delays, and all contracts for the manufacture of such castings were made with reference to and conditioned upon such custom, which said custom was well known to defendant when said agreement was entered into, and was made with reference to said custom."

The court also found that the contract itself was contained upon the printed letter head of the plaintiff, which, among other things, had printed thereon these words: "All agreements contingent upon strikes, accidents and other unavoidable delays, beyond our control."

Nothing is better settled than that it is not admissible to contradict a contract by evidence of custom or usage, but admissible to explain the meaning of words and phrases used and to annex to such contracts certain incidents which circumstances indicate the parties intended to annex when the words they have used do not necessarily exclude the operation of such custom or usage. Lillard v. Kentucky Distilleries & Warehouse Co., 134 Fed. 168, 174, 67 C. C. A. 74.

That nothing will excuse the performance of a contract except an act of God or the public enemy is equally clear. Whether the plain agreement to supply the defendant with all the castings which its business should require is not contradicted by a custom or usage which would excuse the performance upon the contingency of a strike or accident is a very grave question, and one which we pretermit because we do not find that the plaintiff was prevented from performing its contract by the occurrence of any accident or other contingency included by the alleged custom or usage in the steel casting business. It is true that the plaintiff's furnace was shut down from August 1st to November 15th for the purpose of making necessary repairs. But the facts found show that the want of repair which necessitated going out of blast for repairs August 1st was a condition which existed at the time this contract was executed, and had existed for some months before. The output had been severally affected for months by a defective operation, the cause of which was not understood. Various efforts were made to remedy the matter, but without results. In this existing crippled condition plaintiff entered into the contract here involved and continued to operate until some time in June, matters growing worse, when notice was given of a shutdown August 1st to overhaul and repair. It was after the work of overhauling had begun that the cause of the bad draught which had troubled the operation was discovered and remedied. The "accident" or "unavoidable delay" excused by custom or usage must be confined to accidents and delays due to causes originating after the contract. Plaintiff knew when it made this contract that its furnace was working badly, and that normal results could not be relied upon. They did not then know the cause of the trouble, but that the trouble was more vital than they then suspected and would take longer to remedy is a misfortune that cannot be cast upon the defendant as an "accident" excused by custom or usage.

3. The "requirements" for defendant's business for November and December were in excess of requirements of preceding months. The defendant in error says that on October 24th it gave plaintiff in error notice that on or before November 19th its furnace would be in running order, and that if furnished patterns they could put them in sand and be ready to turn out work on or before that day. The facts found show that the castings required were made upon patterns supplied by defendant, and that when plaintiff shut down these patterns were necessarily returned and placed with other founders, and so were in the hands of other contractors. When this notice was given, defendant notified plaintiff that it had been forced to make arrangements with other founders for its requirements for the remainder of the year, and that its patterns were in the possession of such other con-

tractors, to whom orders had been given. The court below found as a fact that from April 1st to the close of the year the prices of such castings advanced materially, and that it was difficult to get orders filled, and that the contracts made by defendants were for the best prices obtainable. The plaintiff, having inexcusably breached its agreement, is not in a situation to complain of the measures resorted to in good faith by the defendant to supply itself with the castings which the plaintiff was under obligation to furnish. It may be that some of defendant's outstanding contracts for November and December "requirements" might have been canceled and the patterns returned to plaintiff; but it was not bound to do so under the circumstances. The market was an advancing one, and defendant made arrangements on best obtainable terms to obtain what plaintiff was unable to furnish, and this is all the plaintiff had a right to ask. Upon the facts found the judgment should have been for defendant for $5,498.24, less $3,-700.78, with interest on this balance from January 1, 1903, and the costs of this suit.

Judgment reversed, with directions to enter judgment in accordance with this opinion.