CAMPFIELD v. SAUER et al.

(Circuit Court of Appeals, Sixth Circuit. November 20, 1908.)

No. 1,800.

CONTRACTS (§ 10*)—VALIDITY—MUTUALITY.

A proposition to a contractor, having a contract for the construction of a specified building, to furnish him with all of the timber of a specified quality and dimension for that building, when accepted, constitutes a valid contract, binding the seller to furnish, and the contractor to buy thereunder, all of such timber required for the building, and not one to furnish merely such as the contractor may order, and therefore void for want of mutuality.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 28, 32; Dec. Dig. § 10.*]

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

This is an action for the price of lumber sold and delivered under a contract, and counterclaim for damages for breach of contract in not delivering lumber as demanded. Jury, and verdict for the plaintiff and against the defendant on its cross-action. Writ of error was sued out by the defendant below.

H. B. Graves, for plaintiff in error.

R. E. Bunker, for defendants in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. The case turns upon the validity of the contract involved, which was in writing, and is here set out:

"Ann Arbor, Mich., July 8, 1905.

"Mr. E. M. Campfield, General Contractor, High School and Library, Ann Arbor, Michigan—Dear Sir: We will furnish you all the timber as below sizes and prices hereafter named and specified free on board cars Ann Arbor, Mich., Ann Arbor Ry. delivery, for the High School and Library Building. Quality to be as per specifications for said building, all as per sizes and specifications, which you are to furnish us. And will do all in our power to get a quick delivery, especially the first floor tier of floor joist. (The following prices are net.)"

Then follows a list of sizes and prices of Georgia yellow pine and hemlock, not necessary to be here set out. This proposal was signed by C. A. Sauer & Co., and accepted in writing by Campfield. There was evidence showing that three orders for lumber were sent by Campfield and accepted by Sauer & Co., and all or nearly all of the timber so ordered actually delivered. The suit of the plaintiff below was for a balance of the price for the lumber so ordered and delivered. There was evidence offered by the defendant below that other orders were subsequently sent, which plaintiffs declined to fill, as well as evidence tending to show the damages sustained by the defendant below by reason of this refusal to fill these orders, which the defendant claims constituted a breach of the contract. The counterclaim or cross-action of the defendant was for the damages so sustained. All of this evidence was rejected upon the ground of the nonmutuality

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

164 F.—53

of the contract as contained in the proposal and acceptance of July 8, 1905, as set out above. The case resolves itself into a simple question as to the validity of the agreement upon which the cross-action was brought.

For the plaintiff in error, Campfield, it was contended below that the contract was one by which Sauer & Co. were obligated to sell all of the timbers, of the character and sizes and at the prices specified in the agreement of July 8th, which should be needed for the carrying out of his contract for the construction of the Ann Arbor High School and Library Building, and that he was upon his part obligated to take from Sauer & Co. all such timbers at the prices named. For Sauer & Co. it was contended that the contract was to sell to Campfield such timbers of the quality and sizes specified, at the prices specified in the agreement, as Campfield should choose to order for the High School and Library referred to, and that the agreement was unilateral, and therefore void, because Campfield was at liberty to order from them none or part or all such timbers, as he saw fit. This was the view accepted by the Circuit Judge, and all of the errors assigned are based upon rulings made upon the ground that the contract was invalid because nonmutual.

We find ourselves unable to agree with this interpretation of the contract. The proposal of Sauer & Co. shows that it was made to Campfield as a contractor for the Ann Arbor High School and Library and that it was a proposition to furnish him with all of the timbers, of the sizes and quality indicated by appended list, at the prices therein specified, which should be needed by Campfield in carrying out his contract. So far as the surroundings of the parties were disclosed by other evidence, it was inferable that Sauer & Co. had had access to the specifications of Campfield's contract, for Campfield says that the list of dimensions of timbers which is embodied in the contract of July 8th was brought to him by one of the Sauers, and the list in the proposal of that date made out from that list. The number of pieces of each size and quality needed by Campfield under his existing contract to construct the Ann Arbor High School and Library was the one thing needed to make the contract one for a definite quantity at definite prices. That could be made certain by the necessity of his building contract, including the specifications thereunder. The number of pieces of each size which should be needed was to be determined by the necessities of the building. This could not be well known, except as the work progressed. It therefore devolved upon Campfield to furnish Sauer & Co. from time to time lists of the quality and sizes needed to carry out the contract. This is the plain meaning of the clause in the proposal reading thus:

"Quality to be as per specifications for the said building all as per sizes and specifications, which you are to furnish."

The proposition was, therefore, not to sell at the price named such timber as Campfield might choose to order, but to "furnish you all the timber * * * for the High School and Library Building." When this was accepted by Campfield, he was obligated to take from Sauer & Co. all of the timber of the quality specified which he should need

to carry out the building contract referred to in the proposition at the prices proposed.

A proposition to a contractor, having a contract for constructing a specified building, to furnish him with all of the timber of a specified quality and dimension for that building, is a very different proposition from one to furnish him with all he may order. In the latter instance there would be a lack of mutuality, for there would be no obligation to order much or little, or any. It would be a mere option, and enforceable only to the extent of orders made and accepted. The case is ruled by the cases of Loudenback Fertilizer Company v. Tennessee Phosphate Company, 121 Fed. 298, 58 C. C. A. 220, 61 L. R. A. 402, and Lima Locomotive Works v. National Steel Company, 155 Fed. 77, 83 C. C. A. 593, 11 L. R. A. (N. S.) 713.

In Loudenback Fertilizer Company v. Tennessee Phosphate Company the contract enforced was one to sell to the fertilizer company "its entire consumption of phosphate rock" for a given term of years at a fixed price per ton. The buyer was engaged in making fertilizers requiring a large amount of such rock. This was held to be an agreement upon the one side to sell, and upon the other side to take, all of such rock as should be required by the necessities of an established business, with reference to which both contracted. We also held that it was a breach of agreement for the fertilizer company, upon an advance in phosphate rock, to buy an incomplete fertilizer made from phosphate rock as a substitute for the higher priced phosphate rock it had agreed to use in the normal conduct of its business.

In Lima Locomotive Works v. National Steel Company, cited above, the proposition accepted was to furnish "all of your requirements in steel castings for the remainder of the year. * * * You agree to furnish the tonnage you wish to order during the following month. We agree to fill your orders as specified to the amount of this tonnage and to make such deliveries as you require." The buyers were conducting an established manufacturing business, which required a large amount of castings. The contract was held to be valid, as one by which the one party was obligated to sell and the other to buy all such castings as should be required in the conduct of its business. The words "tonnage you wish to order" and "such deliveries as you may require" were held to have reference to the requirement of an established business for the "following month" and the delivery of the tonnage thus estimated. In the later case we referred to and approved the language of the court in the Loudenback Case cited above:

"'A contract to buy all that one shall require for one's own use in a particular manufacturing business is a very different thing from the promise to buy all that one may desire, or all that one may order. The promise to take all that one can consume would be broken by buying from another, and it is this obligation to take the entire supply of an established business which saves the mutual character of the promise.'"

The errors assigned which relate to the interpretation of the contract and the evidence excluded because of an erroneous construction are sustained.

Judgment reversed, and a new trial awarded.