**MILLS–MORRIS CO. v. CHAMPION SPARK PLUG CO.**

(Circuit Court of Appeals, Sixth Circuit. June 8, 1925.)

No. 4239.

1. **Sales ⟨⟩⟩71(4)—Contract held by implication to bind seller to fill orders.**

A contract between plaintiff, a dealer in automobile accessories, and defendant, a manufacturer of spark plugs, by which plaintiff agreed to keep on hand a stock of defendant's plugs to meet the requirements of its trade, that all of its purchases during the contract term should be specified, accepted, and paid for at the prices and on the terms set out, *held* by implication to obligate defendant to accept and fill orders which complied with the contract terms and were necessary to enable plaintiff to supply its trade.

2. **Contracts ⟨⟩⟩10(4)—Sales ⟨⟩⟩1(4) — Contract held not indefinite or invalid for want of mutuality.**

An agreement by plaintiff, which had an established trade in automobile accessories, which obligated it to buy from defendant, a manufacturer, all the spark plugs that plaintiff should actually in good faith require in the normal course of its business, is sufficiently definite as to quantity, and is not void for lack of mutuality.

In Error to the District Court of the United States for the Western District of Tennessee; Xenophon Hicks, Judge.

Action at law by the Mills-Morris Company against the Champion Spark Plug Company. Judgment for defendant, and plaintiff brings error. Reversed.

Walter P. Armstrong, of Memphis, Tenn. (Wilson, Gates & Armstrong and Bertrand W. Cohn, all of Memphis, Tenn., on the brief), for plaintiff in error.

J. W. Canada, of Memphis, Tenn. (Canada & Williams, of Memphis, Tenn., and Edwin J. Marshall, of Toledo, Ohio, on the brief), for defendant in error.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

MOORMAN, Circuit Judge. The Mills-Morris Company was a jobber in Memphis, Tenn., engaged in selling automobile accessories and supplies. The Champion Spark Plug Company manufactures and sells a well-known spark plug used on motors. On January 20, 1922, the Morris Company presented to the Plug Company a letter prepared by the latter and accepted by it on January 22d, which, constituting the contract between them, was canceled by the Plug Company May 11th, on the ground that its relations with the Morris Company could not be "amicable and co-operative." Thereupon the Morris Company brought this suit for damages. The District Court, being of opinion that the contract was merely an agreement as to prices and terms of shipment when and as defendant chose to accept orders from the plaintiff, directed the jury, at the conclusion of plaintiff's evidence on the trial, to return a verdict for

the defendant, upon which judgment was entered.

The controversy here is as to whether the contract is valid, and, if so, what obligations are imposed by it. It begins: "We [plaintiff] hereby agree that all of our purchases of the Champion spark plugs between January 1, 1922, and December 31, 1922, shall be specified, accepted, and paid for at the prices and upon the terms and conditions following. Your performance of this agreement is subject to delay caused by strikes, lockouts, labor disturbances, shortage not within your reasonable and practical control." Then follows the price list, after which come the terms of payment. Under the shipping specifications it is provided: "We agree to keep on hand at all times a stock of the different types of Champion plugs sufficient to supply the requirements of our regular dealer trade and to specify only the types required for that trade. We herewith specify shipping dates, quantities, and types for shipment to be made within 60 days, and wherever possible will anticipate our requirements 60 days." There is a provision relating to "sales co-operation," to the effect that a representative of the Plug Company would work directly with the salesmen of the Morris Company, with the view of increasing the sales of Champion plugs to the mutual benefit of the parties. Other clauses relate to distributor's agreements, and it was provided that the prices set out might be advanced by the Plug Company from time to time without previous notice to the Morris Company. Another provision is: "Should any of the terms, provisions or conditions of this agreement be evaded or violated by us [Mills-Morris Company], you are to have the right to cancel or suspend at your option this agreement and/or any orders or specifications in your hands at that time." The Morris Company was to canvass the territory for purchasers and promote the Plug Company's trade and interest in every reasonable way, agreeing that, if "we do not cover our territory or handle our sales, or keep or perform this agreement in all respects to your satisfaction, you may cancel without notice this agreement and/or all unfilled orders and specifications."

It will be noted that plaintiff agreed that all of its purchases of Champion spark plugs, of which defendant was the sole manufacturer, between January 1st and December 31st, should be specified, accepted, and paid for at the prices and upon the terms set out, and, further, it would keep on hand a stock sufficient to supply the requirements of its regular trade, and order only the types required for that trade. There was an understanding as to co-operation between the two in increasing sales to their "mutual benefit and profit," plaintiff agreeing to promote the trade and interest of defendant in every reasonable way.

[1] Plaintiff had been handling Champion plugs prior to the arrangement of January 22d, and, as stated, defendant alone manufactured them. It did not agree in express terms to sell plugs to the plaintiff, but the obligation was clearly implied in its undertakings and the requirements that it exacted of plaintiff. If the agreement related solely to prices and terms of shipments when and if defendant elected to accept orders, as it contends, it is difficult to see why there was exacted from plaintiff an obligation to keep on hand a stock sufficient to supply its trade, or why defendant reserved to itself the option of canceling, not only orders received, but also the agreement. In our opinion it was obligated to supply plaintiff, upon the conditions set out in the contract, with the plugs required by it for its customers.

[2] Nor is the agreement lacking in mutuality because imposing no obligation to buy. Plaintiff had an established trade, and there was implied in the language referred to an obligation to buy from defendant all the plugs that plaintiff should actually, in good faith, and in the normal course of its business, require in supplying its trade. This was sufficiently definite in quantity to be binding. Lima Locomotive & Machine Co. v. National Steel Castings Co. (6 C. C. A.) 155 F. 77, 83 C. C. A. 593, 11 L. R. A. (N. S.) 713; Pittsburgh Plate Glass Co. v. H. Neuer Glass Co. (6 C. C. A.) 253 F. 161, 165 C. C. A. 61.

But it is argued that, even if the agreement was binding, defendant properly exercised its right of cancellation for dissatisfaction in performance. It will be observed that in one of the clauses the right was made dependent upon an evasion by plaintiff of any of "the terms, provisions, or conditions of this agreement"; in the other, it was contingent upon the failure of plaintiff to "cover our territory or handle our sales or keep or perform this agreement in all respects to your satisfaction." It is contended under the last provision that defendant's mere declaration of dissatisfaction was conclusive as to its existence.

Concededly the rights of the parties must be determined by what they have put into their agreement. But this is not a contract involving art, personal taste, or fancy, in

which the party to be satisfied is the sole judge of his own satisfaction. Crawford v. Publishing Co., 163 N. Y. 404, 57 N. E. 616. The performance here related exclusively to the character, utility, and quality of a commercial service. In this class of cases it has been held by some courts that, to justify cancellation under a provision of this kind, there must be reasonable grounds for the dissatisfaction. This court, however, considered the question in American Music Stores v. Kussel, 232 F. 306, 146 C. C. A. 354, L. R. A. 1916F, 882, and after a review of many authorities reached the conclusion that the right of cancellation depended upon the existence of dissatisfaction, regardless of its reasonableness. See, also, Computing Scale Co. v. Barnard Co. (6 C. C. A.) 259 F. 250, 170 C. C. A. 318. The line of demarcation between this and the rule requiring reasonable grounds is admittedly narrow. In the one case, there must be actual dissatisfaction, with or without reason, the question being one of fact for the court or the jury (Thaler Bros. v. Construction Co., 229 Pa. 512, 79 A. 147, 33 L. R. A. [N. S.] 345); in the other, the question of fact is whether there is reason for the dissatisfaction even if it exists.

No evidence was introduced tending to show that defendant was not satisfied save its letter canceling the agreement for lack of co-operation and amicable relations. The prima facie case made out by this evidence the jury might have thought to be rebutted by proof of amicable business relations between the parties, plaintiff's full compliance with the contract while in force, and its ability and willingness effectively to carry out all the terms thereof. Defendant introduced no evidence. If upon another trial it can show that it was actually dissatisfied with plaintiff's performance—not with the contract—it will be entitled to a judgment of acquittance.

Judgment reversed.