9 N.Y.2d 503 (1961)
In the Matter of the Arbitration between Dino De Laurentiis, Appellant, and Cinematografica de Las Americas, S. A., et al., Respondents.
Court of Appeals of the State of New York.
Argued March 29, 1961.
Decided April 27, 1961.
Mathias F. Correa, John W. Nields, Marshall H. Cox, Jr., Jacob W. Abraham and Edmund B. Hennefeld for appellant.
Murray Gartner and Richard H. Borow for respondents.
Judges DYE, FULD, BURKE and FOSTER concur with Chief Judge DESMOND; Judge FROESSEL concurs in result in a separate memorandum; Judge VAN VOORHIS dissents in an opinion.
*506 Chief Judge DESMOND.
We granted petitioner leave to appeal so that we might consider certain problems in the law of arbitration.
In 1957 petitioner De Laurentiis, an Italian producer of motion pictures, respondent Cinematografica, a Panamanian corporation which distributes films, and respondent Enrique Campos Menendez, an author (herein called "Campos"), made a written agreement whereby the three parties covenanted to do what was necessary for the production and distribution of a motion picture to be based on Campos' biography of the South *507 American patriot Bolivar. De Laurentiis, as producer, was to begin photography within 15 months from the date of the writing and was to complete production within 8 months more and was to devote to the enterprise the major part of his time and effort beginning at the date of the agreement. He was required to engage a writer or writers of the first rank to prepare a story outline, a "screen treatment" and thereafter a final scenario. Campos and De Laurentiis were to consult during the preparation of the story outline and scenario. De Laurentiis was to complete a scenario in final form within three months from the date of the agreement and if Cinematografica did not approve that script De Laurentiis was to revise it. De Laurentiis undertook to make all necessary arrangements for financing, for the hiring of actors and a director and for world distribution of the completed picture, all this to be subject to the prior approval of Cinematografica which promised not to withhold such approval unreasonably. Cinematografica made certain other commitments as to financing and distribution. Other provisions required De Laurentiis and Cinematografica to share expenses up to a total of $150,000. Campos was to act as consultant and give his consent to the use of his book for a fee of $75,000. There were in the contract elaborate provisions whereby, if the final scenario should be unacceptable to De Laurentiis, Cinematografica should have the right to take over the whole project by reimbursing De Laurentiis for his expenditures.
Paragraph 14 of the contract required that any dispute arising thereunder should be submitted to arbitration in New York City under the rules and regulations of the American Arbitration Association and the laws of New York State, and in connection thereto each of the parties designated residents of New York City to act as their respective agents for the receipt of process in the State of New York. The motion picture has never been produced and respondents charge that De Laurentiis has never engaged a writer for the scenario or performed any of his other obligations under the agreement. On June 20, 1960 New York City attorneys who had been designated as representatives of respondents sent on their behalf to American Arbitration Association a demand for arbitration of the disputes which had arisen out of the contract between their clients and De Laurentiis and sent a copy of this demand to the agent (Serpe) designated by De Laurentiis.
*508 The letter which demanded arbitration stated that the disputes had arisen from a breach by De Laurentiis of "numerous provisions of the said contract of November 1, 1957, specifically paragraphs 2, 3, 4, 5, 6 and 8 and his resultant breach of other provisions of the contract dependent for their operations on performance of the obligations imposed by the specified paragraphs." The paragraphs so specified describe all the obligations undertaken by petitioner De Laurentiis and so the demand for arbitration (read with respondents' affidavits) charged De Laurentiis with having failed to perform any of the obligations undertaken by him. In the letter of demand, damages of Cinematografica were claimed in a total of $1,105,000 broken down as follows: advanced to De Laurentiis, $75,000; expenditures for travel and other necessary expenses, $85,000; legal expenses, $20,000; loss of business reputation of Cinematografica, $150,000; and loss of its profits, $600,000. Damages of respondent Campos (Menendez) were set forth as: loss of his $75,000 fee as consultant and $100,000 damage to his business and professional reputation.
De Laurentiis responded to this demand for arbitration by commencing the present proceeding for a stay. His petition says that his agreement with Cinematografica and Campos was unenforcible because the promises therein contained were illusory. Also, says he, even assuming the agreement to be valid, the issues and the damages should be limited by the court to those arising directly out of the alleged breach of the agreement.
Special Term denied the application for a stay. The court's opinion held that petitioner was barred from litigating the validity of the contract because, so the court found, petitioner had participated in the selection of arbitrators and in the arbitration proceeding itself. On appeal the Appellate Division, while agreeing with Special Term that the participation of De Laurentiis had debarred him from litigating any alleged invalidity of the contract, went further and examined into his other allegations: that the contract was illusory and that the demand for arbitration was not sufficiently definite. The Appellate Division ruled against him on both these issues.
The holdings below that petitioner so participated that he can no longer contest the validity of the agreement nor the arbitrability of the dispute were based on a series of letters written *509 on behalf of petitioner to respondents' representatives in June, July and August, 1960, after receipt by Serpe, petitioner's designated representative, of respondents' demand for arbitration. We do not think that the mere requests by petitioner's agent Serpe for extensions of time were "participation" in the arbitration within the meaning of subdivision 2 of section 1458 of the Civil Practice Act, construed by us in Matter of National Cash Register Co. (Wilson) (8 N Y 2d 377). Reasonably read, the various applications made by Serpe were no more than successive requests for time to allow petitioner to decide whether to participate in the selection of arbitrators and in the arbitration proceedings or to begin court proceedings for a stay of arbitration. At the time these letters were written neither party had done anything about selecting the arbitrators. It would be unfair to construe careless language by Serpe (whose authority was limited to receiving process) to mean that petitioner was agreeing to go forward in the arbitration.
We turn now to petitioner's arguments for a stay. The first of his positions is that the agreement on its face is so lacking in mutuality that it bound neither party and could not produce an arbitrable dispute. This, however, seems to be completely answered by our decision in Matter of Exercycle Corp. (Maratta) (9 N Y 2d 329). The Exercycle Corporation had argued that its contract with Maratta was illusory since the latter had not specifically agreed to work for life or any other definite period. We pointed out in the Exercycle opinion that the resolution of such a dispute depended primarily on a construction of the agreement and that, when there were permissible differences of interpretation, the issue was for the arbitrators and not for the court. The present agreement, as petitioner points out, does leave to future agreement the approval of the story outline and scenario and failure to approve might put an end to all the obligations. However, De Laurentiis and Campos expressly promised each other to consult at reasonable times and places during the preparation of the outline and of the scenario "to the end that both De Laurentiis and Campos may make every effort in good faith to cause to be created, within the period specified herein, a story outline, screen treatment and final scenario acceptable to both." Thus, in addition to the implication of good faith read into every contract (see Wood v. Duff-Gordon, 222 N.Y. 88), *510 we had an express promise of consultation and of good-faith effort to bring to completion a scenario of such form and quality as to be acceptable. It is for the arbitrators to decide what, under all the circumstances, these covenants contemplated and whether petitioner did all that he was thereby required to do.
As his other ground for a stay petitioner attacks the sufficiency of the demand for arbitration, arguing that the issues and damages are stated in much too general terms and that some of the round figure damage items are outside any possible scope of the arbitration clause. We are told that the claim for "Loss of business reputation" and "Damage to personal and business reputation" as well as the items for legal expense and travel and secretarial expenditures describe purely consequential damages not recoverable under the rule of Matter of Marchant v. Mead-Morrison Mfg. Co. (252 N.Y. 284) and De Lillo Constr. Co. v. Lizza & Sons (7 N Y 2d 102). As to the alleged failure of the demand for arbitration to set forth with definiteness any dispute or disputes, we think the demand (plus the affidavits) is to be read as alleging that petitioner took none of the steps required of him by the agreement and did none of the things he had promised to do. As to whether damages of the kind listed are recoverable, it must be remembered that the parties agreed not only to arbitrate their differences but to do so under the rules of the American Arbitration Association, one of which rules (No. 42) says that the arbitrator in his award "may grant any remedy or relief which he deems just and equitable and within the scope of the agreement of the parties". The arbitration agreement here called for the submission of "Any dispute arising under this agreement" and was not otherwise limited. When we incorporate rule 42 into that clause we have a grant of power to the arbitrators so broad that it would be inappropriate to determine in advance of an arbitration that there must be eliminated from any award any items of damage which the arbitrators might consider "just and equitable" under the facts as developed before the arbitrators (see Matter of Transpacific Transp. Corp. [Sirena Shipping Co., S. A.], 9 A D 2d 316, affd. 8 N Y 2d 1048).
The order should be affirmed, with costs.
*511 FROESSEL, J. (concurring).
I concur in the result. In my opinion, the contract is not illusory, and arbitration is, therefore, the appropriate remedy. As to any consequential damages, the arbitrators are bound by our decisions in Matter of Marchant v. Mead-Morrison Mfg. Co. (252 N.Y. 284) and De Lillo Constr. Co. v. Lizza & Sons (7 N Y 2d 102).
VAN VOORHIS, J. (dissenting).
It is familiar law that courts will not permit arbitrators to change unambiguous contracts nor to make awards of damages which are of so speculative a nature as to be outside of the province of a court of law. There has to be an arbitrable dispute in order to permit arbitration (Matter of International Assn. of Machinists [Cutler-Hammer], 271 App. Div. 917, affd. 297 N.Y. 519; Matter of General Elec. Co. [United Elec. Radio & Mach. Workers], 300 N.Y. 262; Matter of Essenson [Upper Queens Med. Group], 307 N.Y. 68; Matter of Sarle [Sperry Gyroscope Co.], 4 A D 2d 638, affd. 4 N Y 2d 917).
The position of respondent and of the courts below is, in effect, that when parties to a contract containing an arbitration clause get into argument, if any element of the dispute is arbitrable, then the arbitrators have power without limitation by the courts to decide not only the arbitrable element of the controversy but all other matters in difference regardless of whether of themselves these would have constituted arbitrable disputes. In other words, if the contestants disagree about six items, five of which would not be arbitrable if presented alone, all may be submitted to arbitration if one dispute is of an arbitrable nature. Absent that one, nothing could be arbitrated, so the argument runs, under the cases which have been cited; but with that one present, everything else can be arbitrated which the parties choose to disagree about, beyond the control of the courts.
It was held otherwise as recently as Matter of Sarle (Sperry Gyroscope Co.) (4 A D 2d 638, affd. 4 N Y 2d 917, supra). There is no valid reason, it seems to me, on account of which what is arbitrable cannot be submitted to the arbitrators at the same time restraining them from trying or deciding other questions in conjunction therewith which, of themselves, are not subject to arbitration. Neither is there any occasion in my *512 judgment for awaiting the confirmation of the arbitrators' report if it appears in advance that they have no jurisdiction to try such aspects of the controversy.
This is not just a question of the arbitration of consequential damages. The improbability that parties intend to submit consequential damages to arbitration is so strong that they were held to be excluded from the submission in Matter of Marchant v. Mead-Morrison Mfg. Co. (252 N.Y. 284, 301) in an opinion by Chief Judge CARDOZO, in which he said: "We think there would be surprise and consternation in the trade if under cover of such a clause an architect or engineer could hold a contractor liable for the bankruptcy of the owner, and assess the damages accordingly. The precedents are apt that no such power is conferred (Somerset Borough v. Ott, 207 Penn. St. 539; Young v. Crescent Dev. Co., 240 N.Y. 244)." The Marchant case was followed as recently as De Lillo Constr. Co. v. Lizza & Sons (7 N Y 2d 102, 106), in which the opinion states by Judge FROESSEL: "The instant dispute between Lizza and De Lillo had its origin in the contract and prominently raises issues concerning the rights and obligations of the parties under the contract and in the performance thereunder. It is, therefore, arbitrable, in accordance with the fair meaning of their agreement, except, on the basis of our holding in Matter of Marchant v. Mead-Morrison Mfg. Co., with regard to one aspect of the claim for consequential damages asserted in the fourth cause of action. As to that claim, the issue of breach of contract is within the scope of the instant submission, but the assessment of damages is not."
Apart from the fact that an affirmance would, as it seems to me, overrule both the Marchant and De Lillo cases (supra) by injecting the question of consequential damages where neither the arbitration clause nor the rules of the American Arbitration Association contain any reference to them, this is not a case of even consequential damage. Here several items of the damages claimed, which comprise the bulk of the amount for which judgment is sought, are so attenuated that they are not even consequential. The item of $600,000 claimed for loss of profits, for example, and the $150,000 for loss of the business reputation of Cineam could not possibly have been incurred unless under the terms of the agreement the parties had made a further agreement *513 which legally they were entirely free to accept or reject. An agreement to agree is not a binding contract (St. Regis Paper Co. v. Hubbs & Hastings Paper Co., 235 N.Y. 30). In this instance I agree that, in view of the allegation that De Laurentiis did nothing, an arbitrable question is presented concerning whether he should be compelled to return the $75,000 deposit advanced to him and the travel expense of $85,000 plus legal expense and possibly other items incurred on the faith of his taking steps to engage a writer of the first rank to prepare the story outline and to do some other things necessary to launch the project.
Upon the other hand, in view of the terms of the contract and the nature of the undertaking, it is pure speculation to assume that even if De Laurentiis had done everything which he was required to do the venture would have been successful. The contract states that the scenario is to be based on Campos' book, but the story outline and screen treatment are subject to the mutual agreement of Campos, Cineam and De Laurentiis. The contract expressly states that work shall not proceed on the preparation of the final scenario until such approval shall have been given. A veto is provided in case the final scenario deviates from the story outline or treatment in various respects. "Upon the completion and mutual approval by the parties hereto of the final scenario, De Laurentiis undertakes to do all things necessary to the production of the motion picture described in Paragraph `1' hereof."
These are questions about which the parties were yet to agree relating to artistic production. Campos had an absolute veto on whether the dramatization conformed to the theme of his story. Moreover, all of the parties reserved to themselves, under the language above quoted, the right not to proceed unless, after the dramatization had been completed, it seemed to them that it was sufficiently likely to succeed to warrant the further expenditure of time and money.
In Rockcliffe Realty Corp. v. Mutual Life Ins. Co., it was said by Justice PECORA: "In 3 Williston, Contracts, Revised Ed. 1936, § 675A, p. 1947, the author suggests that in determining the construction to be given contracts containing provisions for satisfactory performance, the subject matter of the bargain should be looked into. Where the approval involves `an affair *514 of individual judgment' upon which there can be no standard of reasonableness, there must be personal satisfaction. Wynkoop Hallenbeck Crawford Co. v. Western Union Tel. Co., 268 N.Y. 108, 196 N. E. 760. The contract here falls in the category of those requiring the exercise of individual judgment." (50 N. Y. S. 2d 851, 853.)
In the case cited it was said in the opinion for the court by Judge LOUGHRAN (268 N.Y. 108, 112-113, supra): "We may assume with the referee that in all this there is no element of taste or fancy in a strict sense. It is here demonstrated, however, that the allocation of `administrative and overhead charges' to one of many separate undertakings in a single business is in large degree an affair of individual judgment,  an interpretation which is not matter of general agreement in the business community. Under settled principles, therefore, the contract phrase `satisfactory to the Electric Company' is to be read, not as a stipulation for what court or jury would pronounce satisfactory to a reasonable man, but literally as meaning actually satisfactory to defendant personally. (Duplex Safety Boiler Co. v. Garden, 101 N.Y. 387, 390; Crawford v. Mail & Express Pub. Co., 163 N.Y. 404; American Law Institute, Restatement of the Law of Contracts, § 265.)"
The latter quotation from the Wynkoop case in the excerpt from Judge LOUGHRAN's opinion shows that this rule requiring actual literal satisfaction, not what a court or jury would pronounce satisfactory to a reasonable man, is not confined to situations involving an element of taste or fancy. In the present appeal, however, that is definitely what the clause requiring future consent does cover. It would be difficult to find a situation where that was more literally true than in the determination of whether a scenario follows the theme of a novel in the opinion of the author.
Consequently there could be no profit and no injury to reputation of any one in case of failure to which liability could extend, even though De Laurentiis had engaged the scenario writer of first rank and taken the other preliminary steps to set this venture in motion. No one could know with any certainty, not even enough to spell out consequential damages, whether the scenario would have been accepted by the parties under this clause giving each of them an express veto.
*515 To permit arbitrators to say that they would or would not have accepted and approved of a scenario that was never written is the antithesis of the rule of law. If issues which could not be adjudicated in a court of law on account of the speculative nature of the damage can be the subject of arbitration, a lawyer who understands his duty would not be likely to permit a client to sign a contract of this nature containing an arbitration clause. The majority opinion concludes by saying "we have a grant of power to the arbitrators so broad that it would be inappropriate to determine in advance of an arbitration that there must be eliminated from any award any items of damage which the arbitrators might consider `just and equitable' under the facts as developed before the arbitrators (see Matter of Transpacific Transp. Corp. [Sirena Shipping Co., S. A.], 9 A D 2d 316, affd. 8 N Y 2d 1048)." (Italics supplied.)
This language contains a broad inference that whatever the arbitrators consider just and equitable by way of loss of profits, reputation or anything else about which the parties have argued, would be final and conclusive in any event. The Courts and the Bar are deeply interested, I think, in knowing whether if arbitrators go out of bounds in a matter of this kind it is premature to raise the point before the arbitration begins and too late to raise it afterwards. The questions to be submitted to the arbitrators should be limited, it seems to me, by eliminating at least the claim for $600,000 loss of profits and the damages for loss of personal and business or professional reputation by reason of the nonproduction of the scenario. Nothing can be gained by protracted litigation of those matters before the arbitrators who are incapacitated by the contract from awarding any sums to be recovered by reason thereof.
Order affirmed.