Van Voorhis, J. (dissenting).
It is familiar law that courts will not permit arbitrators to change unambiguous contracts nor to make awards of damages which are of so speculative a nature as to be outside of the province of a court of law. There has to be an arbitrable dispute in order to permit arbitration (Matter of International Assn. of Machinists [Cutler-Hammer], 271 App. Div. 917, affd. 297 N. Y. 519; Matter of General Elec. Co. [United Elec. Radio & Mach. Workers], 300 N. Y. 262; Matter of Essenson [Upper Queens Med. Group], 307 N. Y. 68; Matter of Sarle [Sperry Gyroscope Co.], 4 A D 2d 638, affd. 4 N Y 2d 917).
The position of respondent and of the courts below is, in effect, that when parties to a contract containing an arbitration clause get into argument, if any element of the dispute is arbitrable, then the arbitrators have power without limitation by the courts to decide not only the arbitrable element of the controversy but all other matters in difference regardless of whether of themselves these would have constituted arbitrable disputes. In other words, if the contestants disagree about six items, five of which would not be arbitrable if presented alone, all may be submitted to arbitration if one dispute is of an arbitrable nature. Absent that one, nothing could be arbitrated, so the argument runs, under the cases which have been cited; but with that one present, everything else can be arbitrated which the parties choose to disagree about, beyond the control of the courts.
It was held otherwise as recently as Matter of Sarle (Sperry Gyroscope Co.) (4 A D 2d 638, affd. 4 N Y 2d 917, supra). There is no valid reason, it seems to me, on account of which what is arbitrable cannot be submitted to the arbitrators at the same time restraining them from trying or deciding other questions in conjunction therewith which, of themselves, are not subject to arbitration. Neither is there any occasion in my *512 judgment for awaiting the confirmation of the arbitrators’ report if it appears in advance that they have no jurisdiction to try such aspects of the controversy.
This is not just a question of the arbitration of consequential damages. The improbability that parties intend to submit consequential damages to arbitration is so strong that they were held to be excluded from the submission in Matter of Marchant v. Mead-Morrison Mfg. Co. (252 N. Y. 284, 301) in an opinion by Chief Judge C'akdozo, in which he said: “We think there would be surprise and consternation in the trade if under cover of such a clause an architect or engineer could hold a contractor liable for the bankruptcy of the owner, and assess the damages accordingly. The precedents are apt that no such power is conferred (Somerset Borough v. Ott, 207 Penn. St. 539; Young v. Crescent Dev. Co., 240 N. Y. 244).” The Marchant case was followed as recently as De Lillo Constr. Co. v. Lizza & Sons (7 N Y 2d 102, 106), in which the opinion states by Judge Feoessel : ‘ ‘ The instant dispute between Lizza and De Lillo had its origin in the contract and prominently raises issues concerning the rights and obligations of the parties under the contract and in the performance thereunder. It is, therefore, arbitrable, in accordance with the fair meaning of their agreement, except, on the basis of our holding in Matter of Marchant v. Mead-Morrison Mfg. Co., with regard, to one aspect of the claim for consequential damages asserted in the fourth cause of action. As to that claim, the issue of breach of contract is within the scope of the instant submission, but the assessment of damages is not.”
Apart from the fact that an affirmance would, as it seems to me, overrule both the Marchant and De Lillo cases (supra) by injecting the question of consequential damages where neither the arbitration clause nor the rules of the American Arbitration Association contain any reference to them, this is not a case of even consequential damage. Here several items of the damages claimed, which comprise the bulk of the amount for which judgment is sought, are so attenuated that they are not even consequential. The item of $600,000 claimed for loss of profits, for example, and the $150,000 for loss of the business reputation of Cineam could not possibly have been incurred unless under the terms of the agreement the parties had made a further agree *513 ment which legally they were entirely free to accept or reject. An agreement to agree is not a binding contract (St. Regis Paper Co. v. Hubbs & Hastings Paper Co., 235 N. Y. 30). In this instance I agree that, in view of the allegation that De Laurentiis did nothing, an arbitrable question is presented concerning whether he should be compelled to return the $75,000 deposit advanced to him and the travel expense of $85,000 plus legal expense and possibly other items incurred on the faith of his taking steps to engage a writer of the first rank to prepare the story outline and to do some other things necessary to launch the project.
Upon the other hand, in view of the terms of the contract and the nature of the undertaking, it is pure speculation .to assume that even if De Laurentiis had done everything which he was required to do the venture would have been successful. The contract states that the scenario is to be based on Campos’ book, but the story outline and screen treatment are subject to the mutual agreement of Campos, Cineam and De Laurentiis. The contract expressly states that work shall not proceed on the preparation of the final scenario until such approval shall have been given. A veto is provided in case the final scenario deviates from the story outline or treatment in various respects. “ Upon the completion and mutual approval by the parties hereto of the final scenario, De Laurentiis undertakes to do all things necessary to the production of the motion picture described in Paragraph ‘ 1 ’ hereof. ’ ’
These are questions about which the parties were yet to agree relating to artistic production. Campos had an absolute veto on whether the dramatization conformed to the theme of his story. Moreover, all of the parties reserved to themselves, under the language above quoted, the right not to proceed unless, after the dramatization had been completed, it seemed to them that it was sufficiently likely to succeed to warrant the further expenditure of time and money.
In Rockcliffe Realty Corp. v. Mutual Life Ins. Co., it was said by Justice Pecora: “In 3 Williston, Contracts, Revised Ed. 1936, § 675A, p. 1947, the author suggests that in determining the construction to be given contracts containing provisions for satisfactory performance, the subject matter of the bargain should be looked into. Where the approval involves 'an affair *514 of individual judgment ’ upon which there can be no standard of reasonableness, there must be personal satisfaction. Wynkoop Hallenbeck Crawford Co. v. Western Union Tel. Co., 268 N. Y. 108, 196 N. E. 760. The contract here falls in the category of those requiring the exercise of individual judgment.” (50 N. Y. S. 2d 851, 853.)
In the case cited it was said in the opinion for the court by Judge Loughran (268 N. Y. 108, 112-113, supra): “ We may assume with the referee that in all this there is no element of taste or fancy in a strict sense. It is here demonstrated, however, that the allocation of ‘ administrative and overhead charges ’ to one of many separate undertakings in a single business is in large degree an affair of individual judgment, — an interpretation which is not matter of general agreement in the business community. Under settled principles, therefore, the contract phrase 1 satisfactory to the Electric Company ’ is to be read, not as a stipulation for what court or jury would pronounce satisfactory to a reasonable man, but literally as meaning actually satisfactory to defendant personally. (Duplex Safety Boiler Co. v. Garden, 101 N. Y. 387, 390; Crawford v. Mail & Express Pub. Co., 163 N. Y. 404; American Law Institute, Eestatement of the Law of Contracts, § 265.) ”
The latter quotation from the WynTcoop case in the excerpt from Judge Loughran’s opinion shows that this rule requiring actual literal satisfaction, not what a court or jury would pronounce satisfactory to a reasonable man, is not confined to situations involving an element of taste or fancy. In the present appeal, however, that is definitely what the clause requiring future consent does cover. It would be difficult to find a situation where that was more literally true than in the determination of whether a scenario follows the theme of a novel in the opinion of the author.
Consequently there could be no profit and no injury to reputation of any one in case of-failure to which liability could extend, even though De Laurentiis had engaged the scenario writer of first rank and taken the other preliminary steps to set this ventare in motion. No one could know with any certainty, not even enough to spell out consequential damages, whether the scenario would have been accepted by the parties under this clause giving each of them an express veto.
*515 To permit arbitrators to say that they would or would not have accepted and approved of a scenario that was never written is the antithesis of the rule of law. If issues which could not be adjudicated in a court of law on account of the speculative nature of the damage can be the subject of arbitration, a lawyer who understands his duty would not be likely to permit a client to sign a contract of this nature containing* an arbitration clause. The majority opinion concludes by saying* “we have a grant of power to the arbitrators so broad that it would be inappropriate to determine in advance of an arbitration that there must be eliminated from any award any items of damage which the arbitrators might consider ‘ just and equitable ’ under the facts as developed before the arbitrators (see Matter of Transpacific Transp. Corp. [Sirena Shipping Co., S. A.], 9 A D 2d 316, affd. 8 N Y 2d 1048).” (Italics supplied.)
This language contains a broad inference that whatever the arbitrators consider just and equitable by way of loss of profits, reputation or anything else about which the parties have argued, would be final and conclusive in any event. The Courts and the Bar are deeply interested, I think, in knowing whether if arbitrators go out of bounds in a matter of this kind it is premature to raise the point before the arbitration begins and too late to raise it afterwards. The questions to be submitted to the arbitrators should be limited, it seems to me, by eliminating at least the claim for $600,000 loss of profits and the damages for loss of personal and business or professional reputation by reason of the nonproduction of the scenario. Nothing can be gained by protracted litigation of those matters before the arbitrators who are incapacitated by the contract from awarding any sums to be recovered by reason thereof.
Judges Dye, Fuld, Burke and Foster concur with Chief Judge Desmond;- Judge Froessel concurs in result in a separate memorandum; Judge Van Voorhis dissents in an opinion.
Order affirmed.